## THE STATE OF IOWA;

IOWA CITY, JUNE TERM, A. D. 1857.

In the twelfth year of the State.

---

PRESENT:

HON. GEORGE G. WRIGHT, CHIEF JUSTICE.
" WM. G. WOODWARD, } JUSTICES.
" L. D. STOCKTON, }

---

## RHODES, PEGRAM & CO. *v.* MCCORMICK.

When an execution defendant shall use a particular building as a home, the *whole* of such building, in case of controversy and disagreement, will be presumed to constitute, and be a part of, the homestead, until it is shown by the party adversely interested, that some specific portion is *not* of the homestead character, and therefore not exempt.

If under the same roof with the homestead as defined by statute, there shall be a floor or floors, room or rooms, which are *not* used by the family as a home, they are no more exempt from execution, than if under another roof, or on another and different portion of the lot.

It was not the intention of the law-making power, to exempt from execution an *entire* building or house, for *whatever used*, because some portion of it is used by the owner as his homestead.

So long as the building shall come within the meaning of a homestead, as defined by the Code, the value of it is not limited, though the extent of the ground is; but when not within this definition, it is liable, whatever its value.

Rhodes, Pegram & Co. v. McCormick.

And if a portion of a building shall come within this definition, and a portion not, then a portion may be exempt, and the other not.

The object of the law is to protect the *home*, and preserve it for the family, and not shops, stores, rooms, hotels and office rooms, which are rented and occupied by other persons.

Where an execution under a judgment rendered in 1856, was levied on a certain half lot in the city of M., thirty feet wide by one hundred and forty feet deep, on which the defendant had erected a three story building, thirty feet wide, and sixty feet deep, which the defendant claimed to be his homestead, and exempt from execution; and where referees were appointed by the sheriff, who reported to the District Court, that the building was erected by the defendant in 1850; that the lower stories were occupied by him as a place of business, until the year previous to November 10, 1856; that at the time of making said report, the lower story and cellar, and first floor of said building, were rented to one N. as a store, and occupied by him; that the premises were of the value of about eight thousand dollars; that the defendant finished the upper stories in part, and moved into them in December, 1852, and has continued to occupy the same as a dwelling from that time; that each upper story has five rooms finished, suitably for a dwelling; that for one year after the house was finished, one of the rooms on the second floor, was occupied and used as a physician's office; that for two years, another room on the same floor, was occupied and used as an attorney's office; that still a third room, was occupied for about twenty-one months, by certain attorneys and bankers; that the third story was all in one room until 1854, and for one year immediately after the erection of the house, was occupied and used as a printing office; that the yearly rent of the cellar and first floor, is eight hundred dollars; that the second and third stories are occupied by said defendant and family, and one C. and family, and are worth three hundred dollars per year; that there are no other buildings on said lot; that the premises have never been selected, marked out, and platted as a homestead; that in 1851 and 1855, the defendant (his wife not joining therein,) executed two several mortgages on said premises; and that in their opinion, said building was originally designed as follows: The cellar and first floor for a business-house, and the second and third floors for a family residence, as now occupied; *Held*, That the cellar and first floor of the building, were liable to be seized on execution, and that the second and third stories were exempt from execution, as the homestead of the defendant.

*Appeal from the Muscatine District Court.*

IN September, 1855, the plaintiffs brought their action against the defendants, and attached a certain half lot in the city of Muscatine, to satisfy any judgment they might recover. In June, 1856, they obtained judgment, with an order for a special execution against said half lot. In August

afterwards, an execution accordingly issued, and as appears from the sheriff's return, a disagreement arose between the plaintiffs and W. McCormick, (one of the defendants, and owner of the property,) the said owner claiming said premises as his homestead, and therefore exempt from execution, and the said plaintiffs insisting that they did not constitute a homestead under the law. Referees were, as required by law, then selected by the sheriff, who after examining all the facts in the case, made their report to the District Court. From this report, it appears that the half lot is thirty feet wide, by one hundred and forty feet deep; that thereon is a three story building, thirty feet wide and sixty-four feet deep, which was erected in 1850, by said W. McCormick; that the lower stories were occupied by him as a place of business, until the year previous to the 10th of November, 1856; that at the time of making said report, the lower story and cellar and first floor of said building, were rented to one Nellis as a store, and occupied by him, and that the value of said premises is about eight thousand dollars. They further report, that McCormick finished the upper stories in part, and moved into them in December, 1852, and has continued to occupy the same for a dwelling from that time; that each upper story has five rooms finished, suitable for a dwelling; that for one year after the house was finished, one of the rooms on the second floor, was occupied and used as a physician's office; that for two years, another room on the same floor, was occupied and used as an attorney's office; that still a third room was occupied for about twenty-one months, by certain attorneys and bankers; and that the third story was all in one room until in 1854, and for one year immediately after the erection of the house, was occupied and used as a printing office. They further find, that the yearly rent of the cellar and first floor, is eight hundred dollars; that the second and third are occupied by said McCormick and family, and one Crabb and family, and are worth three hundred dollars a year; that there are no other buildings on said lot; that the premises have never been selected, marked out, and platted as a home-

Rhodes, Pegram & Co. v. McCormick.

stead; that in 1851 and 1855, said McCormick, (his wife not joining therein), executed two several mortgages on said premises; and that in their opinion, said building was originally designed as follows, viz: "the cellar and first floor for a business house, and the second and third floors for a family residence, as now occupied." The District Court being thus possessed of the facts of the case, held that the said premises were properly claimed by said defendant, as being exempt from execution, and ordered that they be released from the levy under said writ. From this order, plaintiffs appeal.

*Richman & Brother*, for the appellants.

*Cloud & O'Connor*, for the appellee.

WRIGHT, C. J.[1]—The decision of this case involves the construction of several provisions of chapter 81 of the Code. These provisions are substantially as follows: The homestead must embrace the house used as a home by the owner thereof. It may contain one or more lots or tracts of land, with the buildings thereon, and other appurtenances; but if within a town plat, it must not exceed one half acre in extent. If when thus limited, its value is less than five hundred dollars, it may be enlarged until it reaches that value. It is not to embrace more than one dwelling-house, nor any other buildings, except such as are properly appurtenant to the homestead as such; and a shop situated thereon, and really used and occupied by the owner in the prosecution of his own ordinary business, not exceeding in value three hundred dollars, may be appurtenant to such homestead. The owner may select his own homestead, and cause it to be marked out, platted and recorded, but a failure to do this, does not leave it liable; that duty, in case of such failure by husband and wife, devolving on the officer having an execution against such owner. Where a disagree-

[1] STOCKTON, J., dissenting.

ment arises between such owner and any person adversely interested, as to whether any land or buildings are properly a part of the homestead, such controversy is to be submitted to referees selected by the sheriff of the proper county. These referees are to examine and ascertain all the facts in the case, and report the same, with their opinion thereon, to the next term of the District Court. When sufficiently possessed of the facts, the court shall make its decision, and may direct the homestead to be marked off anew, and may take any other step in the premises, which in its discretion it may deem proper for attaining the objects of said statute.

Under these provisions, appellants claim that the half lot, with the entire building thereon erected, is subject to their execution; but if this is not true, that at least so much of said building is liable, as is not used as a home by the defendant. On the other hand, appellee insists that the entire premises constitute his homestead, within the meaning of this chapter of the Code, and are therefore exempt. We are of opinion, from the facts before us, that a portion of this property is exempt, and a portion liable to plaintiff's execution; and that, therefore, neither of the extreme grounds assumed by the respective parties, can be maintained. We think that the plain language of the Code, exempting the homestead, warrants this conclusion, and reason and justice would certainly seem to require, that it should be so. The facts reported to the District Court by the referees, do not present the case in so clear a light as could be desired, in order to arrive at a conclusion in all respects satisfactory. Such obscurity relates more particularly to the second and third stories of the building. In one part of the report, it is stated that the upper stories have been occupied by appellee as a dwelling since 1852, and yet they inform us that portions of the second and third floors were used for two or three years for other purposes; that said floors are used and occupied now by appellee and one Crabb, (but which by McCormick and which by Crabb is not shown;) and, finally, it is stated that, in the opinion of the referees, the cellar and first floor were designed " for a business house, and the sec-

Rhodes, Pegram & Co. v. McCormick.

ond and third floors for a family residence, as now occupied."
From this statement of the facts, we cannot say that the sec-
ond and third stories are liable. · It is evident that one, if
not both floors, are used and occupied by appellee as a home
or a residence.   When an execution defendant shall use a
particular building as a home, the whole of such building,
in case of controversy and disagreement, will be presumed
to constitute and be a part of the homestead, until it is shown
by the party adversely interested, that some specific portion
is not of the homestead character, and therefore not exempt.
Governed by this rule, we need only say, that it does not
satisfactorily appear that the second and third floors are not
used by the defendant as a home; and we cannot, therefore,
conclude that any portion of either is liable.   The first floor
and cellar, we think, are clearly liable to plaintiffs' execu-
tion.   Neither from the statement of facts, nor the opinion
of the referees, does it appear that these parts of the building
are used as a home by the owner, nor that they are properly
appurtenant to the homestead as such; nor, finally, that
they are used and occupied as a shop by such owner in the
prosecution of his own ordinary business; on the contrary,
every such claim is expressly negatived by such report.
The only reasonable ground for claiming that these portions
of the building are also exempt, is to be found in the fact,
that they are parts of the same house, portions of which are
exempt; and the further consideration, that difficulties may
arise in settling and determining the respective rights of the
purchaser under the execution and the owner and occupant
of the homestead.

Both of these objections, we think, may be readily an-
swered.   Under the Code, the homestead embraces the
house used as a home.   "To be the homestead, it must be
used, and used for the purpose designed by the law, to wit:
as a home, a place to abide in—a place for the family."
*Charless & Blow* v. *Lamberson*, 1 Iowa, 435.   And if under
the same roof with the homestead, as thus defined, there
shall be a floor or floors, room or rooms, which are not thus
used, they are no more exempt than if under another roof,

or on another and different portion of the lot. A defend-
ant cannot, by calling a house his homestead, make it such.
He cannot, by occupying or using one room in a building
containing forty, exempt the entire premises. Neither can
he, by using all the rooms of the second and third stories as
a homestead, exempt from liability the storerooms that may
be below, but which have no kind of connection with the
homestead as such. What particular part of a building is,
in fact, used as the homestead—as the place for the family—
as the house—is, as a general thing, easily ascertained. It
is such parts as are thus used in good faith, that the law de-
signs to exempt. The parts are the "house" within the
meaning of the section of the Code, which provides that
"the homestead must embrace the house used as a home by
the owner thereof." But it is not to embrace all parts of a
building which are not used as a home. All such parts,
not thus used, are no more included within the homestead
home, than if they were in different buildings. Those por-
tions used as a home, when ascertained, are to be treated as
a house, having a separate locality, disconnected from the
other parts of the building. And while, as a general rule,
it may be true that the term house, includes an entire build-
ing, yet within the meaning of this chapter, it is to be so
construed as to carry out the object and the purpose of the
law, so as to give the claimant his homestead, and not stores,
shops, and rooms, which are never used by the family, or
for a home, or any part of it. In our opinion, it was never
the intention of the law-making power to exempt from exe-
cution an entire building or house, for whatever used, be-
cause some portion of it was used by the owner as his
homestead. So long as the building shall come within the
meaning of a homestead, as defined by the Code, the value
of it is not limited, though the extent of the ground is. But
when not within this definition, it is liable, whatever its
value. And if a portion of a building shall come within
this definition, and a portion not, then a portion may be
exempt, and the other not. The object of the law is to pro-
tect the home and preserve it for the family, and not shops,

stores, rooms, hotels, and office rooms, which are rented and occupied by other persons. This construction attains the object of the Code in exempting a homestead, and prevents the abuse of a law which was designed to discourage, and not to encourage fraud; and this view of the case sufficiently disposes of one position assumed by appellant, that inasmuch as appellee had made his home, or claimed his homestead, in a building, a portion of which is liable, he thereby forfeits his right to claim any part of the building as exempt. We do not think that the use made of the other portions of the building, can make that liable which would otherwise be exempt, any more than the use of a part of it as a homestead would operate to make it all, within the meaning of the law—the house used as a home; or to bring it all within the exemption.

The second objection, is one arising from a supposed inconvenience or difficulty in settling the rights of the respective owners. But why any more inconvenience than if the parties had voluntarily or by agreement thus settled their respective interests? It is not very unusual, certainly, for one person to own the soil and the first floor of a building, and another the second, and perhaps the third story of the same building. So, one may own the soil, and other parties each own the different floors; and instances have doubtlessly occurred, where the owners of the soil had leased or conveyed to another, the right to build the first story and occupy the same, and by agreement acquired the right to build on the same walls other stories, to be owned and occupied by himself. The respective rights of the parties, under such circumstances, when not controlled by contract, are easily settled by legal rules. And the same rules which obtain when the parties become voluntarily thus related, must govern when the relation is an involuntary one. We must not refer in detail to their respective rights and obligations, nor do more than to say generally, that each is to use his own, so as to do as little injury to the property of the other as possible. The title to the soil remains, in the case before us, in the defendant or owner of the homestead. The

purchaser under the execution, acquires the right to the possession of the first floor and cellar, and every part of each, which right is to continue so long as the same is tenantable. He may rent it, and in every respect use and enjoy it as his own property, having regard to the rights of the persons owning and occupying the remaining portion of the building. He has a right to protect his walls; to make all necessary repairs; and to all needful means of access to his said premises. The owner or occupant of the upper stories is to be in no manner disturbed in the possession of said premises; has a right to pass and repass by the ordinary and constructed passage or stairway, so as to enjoy and use said homestead; but must do nothing to endanger the property of the purchaser under the execution, nor to unnecessarily impair his rights. This is all we deem it necessary to say at present, in reference to the legal rights and obligations resulting from this somewhat unusual division of this property. Guided by these suggestions or rules, there need be no reasonable ground for future trouble or difficulty.

Judgment reversed.

STOCKTON, J., *dissenting.*—I dissent from the opinion of the majority of the court in this cause, and will briefly give my reasons for such dissent. I am of opinion that the exemption intended to be provided for by the statute, (Code, ch. 81,) whether the homestead be within or without a town plat, has reference to the soil or ground, rather than to buildings which may be erected on it. I draw this conclusion from the language of the statute, where it defines what shall be exempt as a homestead from judicial sale. In a town, it must not exceed half an acre, and may contain one or more lots, "with the buildings thereon," and must embrace "the house used as a home by the owner thereof." It must not embrace more than one dwelling-house, nor any other buildings, except such as are properly appurtenant to the homestead as such. Code, §§ 1250, 1253. I conclude from these sections, that it is the ground that is primarily intended to be exempted, and not the buildings that may

be erected on it.    The statute contemplates that the head of the family entitled to a homestead exempt from judicial sale, shall select the same, cause it to be marked off by fixed and visible monuments, and a plat of it recorded by the recorder of deeds in the Homestead Book, kept for that purpose. To this ground, so selected, platted, and marked out, the statute refers when it speaks of the "homestead." It is to embrace. "the house used as a home ;" it may "contain" one or more lots of ground ; it must not " exceed half an acre ;" it must not embrace "more than one dwelling-house," &c. The consequences to the party, who, not conforming to the provisions of the statute, seeks to have exempted as his homestead, more than half an acre, or more than one dwelling-house, or a shop or other building not appurtenant to the homestead as such, or worth more than three hundred dollars, are to be deduced from the plain language of the statute.    There can be no doubt but that all such excess is subject to sale on execution, and the liability extends not merely to the building ascertained to be of the excess, but to the soil on which it stands, whether part of the exempt half acre or not.    It would be a very lame conclusion to hold, that only the building was liable to sale, and that the ground on which it stood was exempt.    This much, I think, is clearly provided for by the statute.    But if the defendant converts to another use, a portion of the building situated on his homestead, and occupied as his home; or if, as in this case, he builds a house on his lot, intended partly as his dwelling or home, and partly as a store-house, to be used by himself, or rented out, as his circumstances or necessities may require, not only is there no express provision of law subjecting the property, or any part of it, to the creditor's demand ; but, in my opinion, no such inference can fairly be drawn from the language of the statute, and no such consequence can fairly result from the facts, as that the part of the building so used as a shop, or so let out for hire to others, is subjected to the creditor's execution.    It is a sufficient objection to say, that the law in such case does not so provide, and I am not for supplying its omissions or defects.

In this case, there has been but one building—one house—erected on the lot of thirty feet front. There can, in no sense, be said to be two buildings or two tenements. The lower story is used as a store-house or shop, and the cellar is rented with it. McCormick, with his family, occupies the upper stories, or part of them, as his dwelling or home. There is no claim that the premises exceed half an acre in quantity, or that they do not embrace the house used by McCormick as a home, or that they embrace more than one dwelling-house. To hold that because he lets out the lower stories and cellar to a tenant, the part so let out becomes liable to the creditor's demand, is to my mind a less reasonable conclusion, than it would be to hold that for such reason the whole building, with the ground on which it stands, is so liable. If the party had converted his house into a boarding or lodging-house; if he had covered a half acre with an immense hotel for the entertainment of sojourners and travelers, so long as he continues his home in the building, I believe it is not claimed but that the whole building and premises would be exempt from sale on execution. Yet it is difficult to perceive, that the party who so turns his dwelling into a lodging-house or tavern, does not let it out for hire, in quite as obvious a sense, as he does who lets out the lower story and cellar for a shop or business house.

I am further of opinion, that there is no authority to be derived from chap. 81 of the Code, nor is there any rule or precedent to be found elsewhere, for subjecting part of a building, as the cellar and first story in this case, to sale on execution, and conveying a title to the purchaser; and at the same time holding that the fee simple of the soil on which the building stands, remains in the judgment debtor, as his homestead. Whoever owns the soil, owns whatever is upon it. Any cutting up of the estate, or parceling out the ownership and possession of different parts of a building to different persons, while the soil belongs to the judgment debtor, must be the result of consent and agreement, wherever it occurs. It cannot be the enforced result of compulsory proceedings on execution, by a judgment creditor against an

Rhodes, Pegram & Co. v. McCormick.

,unwilling debtor. The law does not compel parties to make
agreements; nor, in a case like this, does it make an agree-
ment for them. That a purchaser at sheriff's sale shall be-
come the owner of the cellar and first story of the building,
while the ground on which it stands, and the second and
third stories, shall belong to the judgment debtor, is an
anomaly yet to be witnessed in our judicial history.

The owner may undoubtedly let out to tenants a part of
his dwelling-house—different portions or apartments of the
same building,—and the tenant or renter will be protected
in the possession and enjoyment of his particular room or
apartment, while the remainder of the building, with the
soil on which it stands, shall belong to others. Such in-
stances, however, as we have remarked, are the result of the
agreement of parties, and are entered into by consent, and
for a consideration. The estate cannot be cut up, so as to
give to the defendant the fee simple in the soil, and to the
purchaser at sheriff's sale, the fee simple in the building, or
part of it. There is no precedent for so parceling out the
title of the premises—for so separating the title of the house
from the title of the soil on which it stands, as that whilst
the defendant in execution is the owner of both, a purchaser
at sheriff's sale under execution, may acquire title to the
building only. If there is anything in the character of the
building, or any part of it, to take from it its quality of a
homestead, and render it liable to execution, the conse-
quence must extend to the ground also on which it stands.
As it is, in my opinion, the ground that is characterized and
exempted as the homestead, so it must be the ground, and
not the building, or part of it, which by being converted to
some other purpose, loses its quality of exemption, and be-
comes subject to judicial sale. If the building be so con-
structed as to be easily divided into two tenements, and one
of them is let out, either as a business-house or as a dwell-
ing, I think there can be no question but that the separate
tenement, so let out, loses its character as part of the home-
stead, and becomes liable in every sense—both the soil and

the building—to the creditor's demand.   The party so leasing it out, will be understood as having abandoned his claim or right to include it in his homestead.   In this case, there is, however, an obvious impracticability in separating the first story and cellar from the remainder of the building, and particularly in separating the right to the different stories from the right to the soil on which they stand.   If the portion of the premises made liable by the decision of the court to the creditor's execution, constituted a separate tenement, distinctly marked out, and set apart from the remainder of the homestead, in such manner as that the purchaser at sheriff's sale might acquire a fee simple title to the whole, —the soil as well as the building—the argument *ab inconvenienti* would lose much, if not all of its force.   In such case, the defendant's homestead might be marked off anew, and a new plat and description made and recorded.   He would then be the owner not only of the ground left to him, but of all the building by which it was covered.   The inconsistency would then be obviated, of holding that a piece of ground may be called his homestead, but that he does not own the building erected on it.   I give full force and effect to the consideration and argument, that it is not within the spirit of the act, that the judgment debtor should be permitted to claim exemption for his first story and cellar, let out and used for business purposes, any more than for any other building not appurtenant to his homestead, under another roof, or on another part of the same lot.   If the statute, however, contains no plain and express direction to meet the present case, or if the judgment of the court is not the legitimate inference from its provisions as they stand, the argument should rather be addressed to the legislature, that make the laws, than to the courts, that can only construe them when made.   As I do not think that the statute has made provision for a case like the present; and as the intention of the law-making power, in such case, is not to be gathered from the words of the act, I think it safer to wait until the legislature shall speak authoritatively, rather than for the courts to indulge in a species of judicial legis-

lation, which the facts and necessities of the case do not require.

In my opinion, the order and judgment of the District Court should be affirmed.