Johnson, J.
A former application for this purpose was considered by the supreme court in Cincinnati College v. La Rue, 22 Ohio St. 469.
*280 It was there held, that the application, was premature ; that under the statute, and before the auditor can be compelled to make a transfer, evidence of the title of the person or party to whom it is to he made, must be presented, and that if the transfer sought is only of part of such property, satisfactory proof must, also be made of the value of such part, as compared with the value of the whole as charged on the duplicate.
The defects of the former application having now been supplied by the proper showing as to title and comparative value of the'part sought to be transferred, the question again presented is, whether the relator is entitled to a peremptory mandamus.
This depends upon the nature of the estate conveyed, and the intention of the parties, as evidenced in the indenture.
1. ■ As to the transfer of a second story to the name of a purchaser or lessee, where the whole lot and building stands in the name of the vendor or lessor for purposes of taxation.
The statute under which transfers are to be made (67 O. L. 105) is as follows:
“ Sec. 1st. The county auditor shall, on application and presentation of title, with such affidavits as may be required by law, or the proper order of a court, transfer any land, or town lot, or part thereof, charged with taxes on the duplicate, from the name in which it may stand into the name of the owner whenever rendered necessary by any conveyance, partition, devise, descent, or otherwise, and, if, by reason of the conveyance, or otherwise, a part only of any tract or lot, as charged on the duplicate, is to he transferred, the party or parties desiring the transfer shall make satisfactory proof of the value of such part, as compared with the valuation of the whole, as charged on the duplicate, before the transfer shall be made, etc.”
This section also prohibits the recording of any absolute conveyance without such transfer.
*281 By the act in relation to permanent leasehold estates (2 S. & C. 1142), it is declared that:
“ Permanent leasehold estates, renewable forever, shall be subjeci to the same law of descent and distribution as estates in fee; ” and provides that “ sales thereof . . . shall be governed by the same laws that now, or may hereafter govern . . . sales of estates in fee.”
Again, by section 20 of the act relating to descents and distribution (1 S. & C. 505), it is declared that:
“ Permanent leasehold estates renewable forever, shall be subject to the same law of descent and distribution as estates in fee, etc.”
By section 2 of the tax law (2 S. & C. 1489): “ The terms ‘ real property’ and ‘laud,’ wherever used in this act, shall be held to mean and include not only the land itself, whether laid out in town lots or otherwise, but also all buildings, structures, and improvements, and other fixtures of whatever kind thereon, and all rights and privileges belonging or in any way appertaining thereto.”
This comprehensive definition for purposes of taxation is applicable as well to the statute governing transfers.
The constitution provides for the taxation of all property, where not exempted as therein authorized by a uniform rule, according to its value, and requires that laws shall be passed for that purpose.
By section 70 of the tax law (2 S. & 0.1468): “ It is the duty of every person seized of or holding lands not before listed, to list the same for taxation with the county auditor on or before the third Monday in May, after the same shall be subject to taxation, and imposes a penalty for a failure to do so.”
By section 71 it is provided that: “ It shall be the duty of each and every person holding lands as aforesaid, to pay the tax which may be assessed thereon, each and every year.”
These citations, and others that might be made, show that while the taxes are levied and assessed upon property, they are also a personal obligation of the owner of that *282 property, which it is his duty to pay. The general rule then is, that whoever owns the property should pay the taxes assessed on it.
But it is said that said section 18 only makes if the duty of the auditor to make such transfer of land or town lot or part thereof, and that the transfer demanded is not of a lot, nor part of it, but of a part of a building, bounded by horizontal lines. In short, that no transfer can be made of part of real property, not divided by vertical lines.
We apprehend, that the building, whenever it isapermanent improvement, is land within the meaning of the law, for the purposes of taxation, and that the words “ part thereof” may be applied to it, as well as the lot on which it stands, and may consist of a part, by metes and bounds, or definite description of a separate part, or of an individual aliquot part of the whole, provided the conveyance in terms conveys a title and ownership in the estate which is liable t© be assessed. ‘
The question therefore remains, whether the Mercantile Library Association held such an estate as should be listed by it, and upon which it should pay taxes ?
It was in form a lease in perpetuity of a room of specified dimensions, in the second story of the building, with right of ingress and egress, and with perpetual covenants by the lessor to heat and to rebuild.
There is a limitation on tire power of alienation by the lessee, which may affect the value of the estate, rather than its character as real property within the meaning of the tax laws.
That there may be distinct and separate estates in land and structures thereon by other than vertical lines, has long been well settled. Coke on Littleton, 48 b.
Thus, if the owner of land grants the trees growing thereon to another and his heirs, with the right to cut and carry them away at his pleasure, forever, the. grantee acquires an estate in fee in the trees, with an interest in the soil sufficient for their growth, while the fee in the soil re *283 mains in the grantor. Clap v. Draper, 4 Mass. 34 ; Knotts v. Hydrick, 12 Rich. 314.
So, in eases of mines, quarries, and the like, there may be a double ownership, one of the mines, the other of the soil, each held by distinct and independent titles. 1 Wash-burn on Real Property, Ch. 1, secs. 11 and 12, and cases cited.
So a dwelling-house may be the subject of ownership in fee, although its owner may have no further interest in the land on which it stands than a right to have it remain there ; and one may hold such an estate in a single chamber in such house. Doe v. Burt, 1 Tenn. 701; Proprietors v. Lowell, 1 Met. 538, 541; Cheeseborough v. Green, 10 Conn. 318; Loring v. Bacon, 4 Mass. 575. 1 Washburn on Real Property, [5] sees. 11 and 12.
The case of the Proprietors v. Lowell, supra, is in point. It was an action by a church to recover back, taxes claimed to be illegally assessed.
The plaintiffs had purchased a lot and erected thereon a building, with a cellar, basement and second, story.
The cellar was used for purposes connected with the church; the second story was fitted up for use as a church, and the basement was made into store rooms, which were rented for that purpose.
These stores were assessed under the head of real estate, as “ six stores under church and vestry.”
It was held that these store rooms were not exempted under the statute, which provides that “ all houses of religious worship, and the pews and furniture within the same,” shall be exempted.
Shaw, C. J., said: “ There may be several distinct tenements under the same roof; and tenements are as essentially distinct, token one is under the other, as when one is beside the other.” The State v. Mayor, 1 Dutcher, 525 ; Detroit v. Mayor, 3 Mich. 172; The State v. Luster, 4 Dutcher, 103; Logan v. Washington Co., 29 Penn. St. 373; Coke, Litt., sec. 59 (486) ; Rhodes v. McCormick, 4 Iowa, 368.
An examination of the authorities, and the provisions *284 of this instrument, leads to the conclusion that the association holds a permanent leasehold estate in the second story of this building, or any other that may be built to replace it, and an interest in the land and residue of the building, so far as necessary to the use and enjoyment of this estate, and that this is a distinct and separate estate in land, liable to taxation in the name of the owner, according to its true value in money.
What that valuation should be for the purposes of transfer, is a question for the auditor to determine in view of all the terms and conditions of the lease, as well as of the value of the property 'itself.
The remaining point is, whether, under this lease, it was the intention of the parties that the lessee should pay any portion of the taxes on the property ?
In the Larue case, 22 Ohio St. 469, it was assumed that specified apartments in a building might be transferred, if the proper proof was made to the auditor, and if the intention of the parties was to that effect.
This lease is said to have been prepared by an eminent lawyer. He doubtless had in his mind the then state of the law, on the subject of taxation, and the power of the legislature and of the city over the subject. By section three of the tax law of 1846 (2 Curwen, 1262), which was then in force, all buildings belonging to scientific, literary or benevolent societies, and used exclusively for such purposes, together with the land actually occupied, not leased or otherwise used with a view to profit, were exempt.
By section 12 of the same act (2 Curwen, 1266), each parcel of real property belonging to any such society, and school and ministerial land, held under lease, “ shall be valued at such price as the assessor believes could be obtained at private sale for such leasehold estate.”
Section 7 of the same act (2 Curwen, 1264), property held under lease, which is owned by any religious, literary, or scientific, or benevolent society, shall, for the purpose of taxation, be considered the property of the lessee, and *285 shall be listed by him or his agent, as in other cases, unless such leasehold is exempt..
By the law now in force (2 S. & O. 1442), leasehold property for a term exceeding fourteen years, where the property is owned by the state, or any such society, and school and ministerial lands, are to be taxed as the property of the lessee; and by section 9 of the same act (2 S & O. 1443), it is to be valued at the value of the leasehold estate, as determined by what it would bring at private sale.
If this leasehold estate was bounded by vertical lines there would be no doubt that the auditor should make the transfer, but it is insisted that there is no law requiring such transfer when the estate is bounded by horizontal lines.
It is obvious that the association owns property of value, on which somebody should pay taxes.
At common law, an estate for years, renewable for ever, was a chattel; but by our statutes, and by the decisions of our courts, they are treated as real estate. Northern Bank of Kentucky v. Roosa, 13 Ohio, 336. It is there said, speaking of such estates : “ They have not, in fact, a single characteristic ” (since the act of 1821) “ of the old common law estate for years, except they may be granted to commence in futuro.”
“ They a.re immovable; they do not attend the person; can not be defeated by any act of the grantor, as, for example, a common recovery; are conveyed by the same formalities as freeholds; are subject to the same public burdens ; descend to the heir ; and can not be .subjected to the debts of the deceased owner, except by the proceedings necessary to subject freeholds.”
As the law then stood, as well as now, such estates were taxable in the name of the owner.
Then, as now, the taxing power of the state was limited only by the limitations on the legislative power. The same may be said of. the power to levy assessments and special taxes for city purposes.
*286 Then, as now, the owner was made personally liable for the taxes on the property he owned which was subject to taxation.
In view of these considerations, and doubtless of the fact that the association objected to paying,special assessments, when they would be only remotely benefitted, the parties inserted the following clause on the subject of taxes :
“And the said party of the first part agrees to hold the said party of the second part secure and harmless against all special assessments or taxes, such as paving and lighting the streets, etc., which may be levied upon the said party of the second part, for city purposes, and against no other taxes whatsoever, and for delinquency in the payment of such other taxes the said party of the first part may.reenter.”
This was a covenant for the benefit of the lessee, that it should be held secure and harmless against special assessments or taxes for city purposes, but against no other taxes whatsoever. This is a clear implication of liability by the lessee for all other taxes and assessments for state, county, or municipal purpose, on the leasehold estate. It is also a guaranty by the'lessor to save the association harmless, for part only of such liability. This conclusively appears by the re-entiy clause, by which it is provided that the lessor will not save the lessee harmless for other taxes, and for delinquency in the payment of such other taxes the lessor may re-enter. If there was no obligation to pay, there could be no delinquency.
It is true there is no direct covenant of the lessee to pay taxes. This was unnecessary, for the reason that the law imposed that obligation, the same as in case of a vendee.
To exempt the association from this legal duty, required an express contract.
To the extent of the special assessments or taxes for city purposes the lessee is expressly exempted, but if it fails to pay “ all other taxes,” the lessor may re-enter.
We think it clear that the parties at the time intended *287 this clause to fix the obligation of the parties to pay taxes on the estate granted.
Stress is laid on the words “ taxes that may be levied on the said party of the second part ” as meaning taxes on the association, as distinguished from taxes on the property.
This point is untenable. The parties were contracting as to this property, and fixing the obligations of the parties growing out of the lease.
Again, taxes assessed on property are also in fact taxes levied upon the owner as well, so that the taxes referred, to include only such as are levied on this property, or the association as its owner. It does not embrace, under the term “other taxes against such party,” taxes on other property it may own.
Therefore the clear and manifest intention was to relieve the lessees of all'public burdens imposed on them as owners, in the nature of special assessments for city purposes, and as to all other taxes, leave the association to its liability the same as other owners, with the additional provision in the contract that if it is delinquent in the payment of these other taxes, the lessor may re-enter. The difficulty that has been suggested in describing the property is easily obviated by giving the number of the lot and a description of the premises leased, with suitable reference to the lease, which is a matter of record.
Neither do we think that the association is a necessary party, nor that mandamus is not the proper remedy.
The association is not concluded by these proceedings. As between the relator, in whose name the entire property is taxed, and the auditor, the question is one of the non-performance of official duty. ' .
The relator has the statutory right to .be relieved from the payment of taxes on property it does not own and. has conveyed to another, whether it is charged to the association or not.

Peremptory mandamus awarded.

Scott, J., dissented.