In re COLES.

(District Court, N. D. Iowa, W. D.    July 6, 1915.)

No. 1068.

BANKRUPTCY ⟨⟩⟨⟩396—HOMESTEAD EXEMPTION—IOWA STATUTE.

Bankrupt, who was a widow with four children, six years before the bankruptcy bought a house and lot for $1,400, in which she after that time lived with some or all of her children. It was a two-story and basement house, 22 feet wide and fronting on a street. For a time she occupied the main room on the ground floor as a store, and afterward rented it from time to time as opportunity offered, using the rents in support of her family. The second story, a shed addition in the rear, and the basement were occupied by bankrupt and her family as a residence. She sometimes took roomers. There were stairways leading from the main ground floor room to the second story and to the basement. When that room was rented, they were closed, but not taken down, and outside stairways were used. Pipes for water and the plumbing in the second story ran down through the first story to the basement. At the time of bankruptcy the property was worth from $3,000 to $4,000. Bankrupt owned no other real estate, and claimed this property in her schedule as her homestead. Code Iowa 1897, § 2972 et seq., exempt to the head of a family a homestead not exceeding one-half acre, if within a city or town, with the building and other appurtenances thereon, habitually and in good faith used as a part of the same as a homestead. Held, that this building could not be divided, so as to secure to the bankrupt her right to the exclusive use of any part of it as a homestead, or in fact without destroying its value for any purpose, and that, under the statute as construed by the Supreme Court of the state, she was entitled to retain the entire building and lot as her homestead.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–668; Dec. Dig. ⟨⟩⟨⟩396.]

In Bankruptcy. In the matter of Sintha A. Coles, bankrupt. On petition of bankrupt for review of an order of the referee approving report of trustee setting apart to her a homestead exemption. Reversed.

G. T. Wellman, of Sheldon, Iowa, for petitioner.
T. E. Diamond, of Sheldon, Iowa, for trustee.

REED, District Judge. Sintha A. Coles was adjudicated a bankrupt by this court February 18, 1913, upon her own petition. At such time she owned in her own right a two-story brick-veneered building in the city of Sheldon, O'Brien county, this state, in which she had lived with her family for several years prior thereto, and claimed it as her homestead and exempt from judicial sale under the statutes of Iowa. She owned no other real estate. E. B. Myers was appointed

trustee in bankruptcy of her estate, and on May 26, 1913, set apart from said real estate the following as exempt to her as a homestead, viz.:

"The certain one front room and the certain three rearmost rooms, all on the second floor of the building (above mentioned), of the value of about $600, and a small quantity of personal property."

The bankrupt was then living upon the second floor of said building, occupying all the rooms thereof as her homestead, but she was not then notified of the report of the trustee.

On June 12th the referee entered an order as follows:

"The trustee herein having filed his report of exempt property in accordance with General Order XVII (89 Fed. viii, 32 C. C. A. xix), and no exceptions being taken thereto, now, on motion of T. E. Diamond, attorney for said trustee, it is ordered: That said trustee's report of exempt property be and the same hereby is in all things confirmed, and the bankrupt's claim to exemption is hereby determined accordingly. That the property specified in such report be delivered to said bankrupt forthwith."

No notice was given to the bankrupt of this order until shortly before July 26th, when she filed with the referee exceptions or objections to such report, so far as relates to the homestead and the approval thereof by the referee, upon the grounds, among others, shortly stated, that said report in effect denies to her a right of homestead in such property, because said rooms so set apart to her are so related to other rooms in the building on the same floor, not assigned to her, that they cannot be partitioned or separated, so that she can have the exclusive use thereof, and do not afford her the use of the toilet and other rooms necessary and essential to afford her a reasonable homestead. August 14th the referee entered an order overruling such exceptions "without hearing counsel thereon," as he recites in the order. September 22, 1913, the bankrupt filed a petition for review of such report of the trustee, and of the order of the referee approving the same.

The referee has filed his certificate, showing the proceedings before him in said matter substantially as above stated. The trustee objects to the consideration of the petition for review, because no exception was taken to the report of the trustee or to the order of the referee, and that the petition for review was not filed with the referee within 10 days after such order was made, as required by a local rule in bankruptcy in this district. It is sufficient to say of the objections to the consideration of the petition for review that they are without substantial merit and must be and are overruled.

The testimony shows, without any dispute: That in April, 1907, the bankrupt contracted for the purchase of the premises in controversy for the sum of $1,400, took possession thereof at once, and in June, 1909, received the deed therefor, having then paid or settled for the full purchase price. At the time of such purchase her family consisted of herself, three daughters, and one son (her husband having recently died), and they occupied these premises as their homestead. Later one of the daughters married and moved from home; the son at the time of the bankruptcy was absent from home, whether permanently or only temporarily does not appear; but Mrs. Coles con-

tinued to live in the building, and to occupy all of the rooms on the second floor, consisting of a sitting room, kitchen, dining room, closets, pantry, water-closet, the cellar or basement, and a shed or lean-to attached to the rear of the main room of the first floor. The building is approximately 22 feet wide (the width of the lot) and some 90 feet in length, and fronts upon a street to the south. At first the bankrupt occupied the entire building and basement, using the front part of the first floor or main room as a store for the sale of secondhand goods, and the rear part as a kitchen and dining room, and all of the second floor for sleeping rooms of the family, and some roomers, and the shed or lean-to and basement for fuel, storage, washtubs, and other domestic uses. Later she successively rented the main room upon the first floor for different purposes, first as a salesroom of secondhand goods, then as a machine shop, and later for some other purposes, as she had opportunity to do from time to time, and used the income therefrom (approximately $250 per year for a part of the time) to aid in the support of herself and family. The rooms upon the second floor, the shed, and basement have always been used in connection with the use of the property as a homestead. Originally there were stairways leading from the inside of the main room of the first story to the basement and to the second floor, which were temporarily closed when the main room of the first floor was rented, as they were not needed by the occupants (but the openings were left, so they can be used when needed), and access to the second floor was reached by two outside stairways, one to the rear of the building from inside the shed, and one on the outside leading from the street in front, one of which rests in part upon a public alley of the city, and at present the only means of access to the second floor, both of which stairways enter anterooms upon the second floor that lead to a hallway extending nearly the entire length of the second floor, and from which the living rooms on that floor are reached. The basement, after the temporary closing of the cellarway leading from the first floor, was reached from the outside cellarway. There are three chimneys resting upon brackets in rooms on the second floor, which extend through the roof, into which flues or pipes enter from stoves used for heating purposes. The room in the first story was heated originally by means of stoves; the pipes extending through the ceiling into the chimneys upon the second floor. At some later time the first floor was heated by steam from a steam plant in a neighboring building. The plumbing from the second floor extends through the floor into the walls of the room below, thence to the basement, where it connects with the sewer pipes. The water pipes extend from the mains, through the first story to the second. The cellar is reached from the second story via the stairways before mentioned. Besides the sitting room, kitchen, dining room, closets, and pantry, there are some nine other small rooms upon the second floor, used for sleeping rooms by the bankrupt and members of her family, and at times some of them by roomers and transients, who may want them temporarily.

It is from the building thus shortly described that the four rooms upon the second floor were set apart to the bankrupt as the home-

stead of herself and family. The oldest daughter, Allie M., was, at the time of the bankruptcy, about 24 years old, lived at home with her mother, and was employed, and had been for some time, as saleslady or clerk in a store, and at times in a telephone office, earning some $35 a month, from which she contributed to the support of her mother and a younger sister some 9 or 10 years old. The value of the building and lot as a whole at the time of the bankruptcy is estimated at $3,000 to $4,000; but the first story, apart from the rest of the building, it is said by some of the witnesses, would have no market value, but with the right to rest permanently upon the basement wall, and have the roof kept in proper repair, it would be worth about $1,000. It is obvious from this description of the building, which is approximately correct, that the four rooms set apart by the trustee and approved by the referee as the homestead of the bankrupt are entirely inadequate to afford her a reasonable and proper homestead, and it was practically so conceded in argument on behalf of the trustee. The report of the trustee, setting apart such rooms, and the approval thereof by the referee, as the homestead of the bankrupt, must therefore be each set aside and vacated.

Besides asserting the inadequacy of the rooms set apart for the homestead, it is contended in behalf of the bankrupt that the design and construction of the building and the use made of it by her are such that the building cannot be partitioned or so divided as to afford her a reasonable and proper homestead in a part thereof, with reasonable access to other rooms that are actually necessary and essential to a homestead, which should not be impaired or invaded by the occupants of the first floor or other parts of the building, and that she is entitled to have the whole building and premises set apart to her as a homestead; and this is the important question involved in this controversy.

Under the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544) a bankrupt is entitled to the exemptions provided by the state law in force at the time the petition in bankruptcy is filed. So far as applicable Code of Iowa 1897, § 2972 et seq., provides: That the homestead of every family, whether owned by the husband or wife, shall be exempt from judicial sale. A widow or widower, though without children, shall be deemed a family, within the meaning of this statute, while continuing to occupy the real estate used as a homestead. It may contain one or more contiguous lots or tracts of land, with the building and other appurtenances thereon habitually and in good faith used as a part of the same homestead. If within a city or town, it must not exceed one-half acre in extent; otherwise it shall not contain in the aggregate more than 40 acres, and shall not embrace more than one dwelling house or other buildings, except such as are properly appurtenant thereto; but a shop or other building situated thereon, actually used and occupied by the owner in the prosecution of his ordinary business, which does not exceed $300 in value, is appurtenant to the homestead. Upon the death of either husband or wife, the survivor may continue to occupy the whole homestead until it is otherwise disposed of according to law. If there be no survivor, it shall

descend to the issue of either husband or wife according to the rules of descent, unless otherwise directed by will, and it shall be held by such issue exempt from any antecedent debts of their parents or their own, except those of the owner thereof contracted prior to its acquisition. That this bankrupt is entitled to a homestead exemption in this property under the Iowa statute is not controverted; but the trustee, in behalf of the creditors, contends that she is only entitled to the rooms upon the second floor of the building actually used by her and her daughter, or daughters, as their place of abode, and Rhodes v. McCormick, 4 Iowa, 368, 68 Am. Dec. 663, is relied upon as sustaining this contention.

In that case the property involved was a city lot 30 feet wide by 140 feet deep, upon which a three-story building 30 feet wide, the full width of the lot, and 64 feet deep, was erected by the defendant McCormick in about 1850, of the value of $8,000, the lower story of which was occupied by him as a store or place of business, for which it was originally designed, for some four or five years after it was built. At the time of the hearing in the district court the first story and cellar were rented to another, who used them as a store, the yearly rental value of which was $800. The two upper stories were finished by McCormick in about 1852, into one of which he moved and continued to occupy as the dwelling house of himself and family until the time of the hearing. Each of such upper stories had five rooms suitable for a dwelling; but for two years or so after they were finished some or all of the rooms upon the second floor were used as offices by attorneys and others for business purposes. The third story was used for a year or so as a printing office. Upon substantially such facts the trial court held the entire property exempt to McCormick and set the same apart to him as his homestead. The Supreme Court reversed this decision, and set apart to McCormick only the second and third floors and the land as his homestead, and held that the first floor and cellar were not exempt, and directed the sale thereof upon execution apart from the land, and suggested in its opinion that the purchaser of the first floor and cellar and McCormick, as the owner of the two upper stories and the land, should each use his separate property so as to do as little injury as possible to the property of the other. There is a vigorous dissenting opinion by one of the justices.

McCormick v. Bishop, 28 Iowa, 233, arose later out of that decision, because, as it appears, McCormick and the purchaser of the first floor and cellar of the building did not or could not observe the admonition of the court "that each should use his separate property so as to do as little injury as possible to the property of the other." But nothing was decided in this later case, further than that Bishop, as the purchaser of the first floor and cellar at the execution sale, and McCormick, as the owner of the second and third stories and the land, were not tenants in common, but adjoining tenants. Though the case was affirmed, it was remanded to the district court, with leave to plaintiff to amend the petition. What disposition was subsequently made of the case does not appear in the published opinions of the court.

The Supreme Court of Iowa has persistently declined to enlarge the

rule upon which the Rhodes Case was decided. In Wright & Co. v. Ditzler, 54 Iowa, 620, 7 N. W. 98, the defendant was the owner of a two-story frame building 22x40 feet, with a cellar under part of it, which had been exclusively occupied by him since it was erected in 1867. He was a merchant and produce dealer, and used the first floor of the building as a storeroom for the keeping and sale of merchandise by himself, and kept a store in that room and on that floor. The upper story had been used since its erection by the defendant and his family for dwelling purposes, and they had no other dwelling house or abode. The cellar had been used for family purposes, and at the same time defendant kept certain articles belonging to his stock of merchandise, as well as for family use. There were two entrances to the cellar, an outside entrance, and one inside from the room used as a storeroom, with steps leading down under the stairway to the second floor. In going to and from the cellar the family used the inside entrance. There is some further description of the building. The district court awarded the entire building to the defendant as his homestead, and the Supreme Court said:

"In Rhodes v. McCormick, 4 Iowa, 368 [68 Am. Dec. 663] it was held by this court that the ground and the second and third stories of a building thereon were exempt from judicial sale as the homestead of the defendant, while the first story and the cellar were subject to execution. In that case, however, the referees found that the cellar and first floor were originally designed for a business house. The building was three stories, 30 feet wide, and 64 feet deep, and the lower story and cellar were rented for $800 a year. The building involved in this case is a two-story frame building, 22x40 feet, with a cellar under part of it. It is not shown that any part of it was originally intended for a place of business. It was not rented, but has always been exclusively occupied by the defendant and his family. The cellar is used by the defendant's family, and the only convenient way of access to it in some portions of the year is through the lower story. The facts of this case clearly distinguish it from Rhodes v. McCormick. We feel clearly of opinion, under the facts found by the referees, that the whole building is exempt as defendant's homestead"

—and the judgment of the district court was affirmed.

In Smith v. Quiggans, 65 Iowa, 637, 22 N. W. 907, the defendant owned a two-story building and the lot on which it stood, and occupied it with his family as a residence. They lived in the lower story for some time, and afterwards moved into the second story and used that as a dwelling place or residence. The first story was divided into two rooms, and after the family moved into the second story they continued to use the rear room of the first story as a kitchen, and the front room as a grocery store. Access was gained to the second story by an outside stairway. The defendant testified that it was his purpose in the future to use the whole building as a residence, and that the second floor did not contain sufficient rooms for his family. It was not claimed by plaintiff that either the second story or the ground on which the building was situated was subject to be sold in satisfaction of plaintiff's judgment; but he contended that the lower story was not exempt from judicial sale. The trial court held the entire property exempt, and the Supreme Court said:

"We think, however, that the whole property is exempt. Defendant occupied and used the first story of the building in the prosecution of his ordinary

business. If this had been a separate building of the same value and situated on the same premises, and he had used it for the same purpose, it clearly would be exempt, under section 1997 of the Code," which allows as a part of the homestead a building not exceeding $300 in value, which he uses as a shop or place in which to conduct his ordinary business. "Regard ought to be had to the spirit of the law rather than to its strict letter. The manifest purpose of the Legislature was to exempt to the owner, in addition to the building or place occupied by him as a home for his family, the building or place which he uses and occupies in the prosecution of his ordinary business, provided it is appurtenant to the homestead and its value does not exceed $300. * * * The case is clearly distinguishable from Rhodes v. McCormick, 4 Iowa, 368 [68 Am. Dec. 663], and Mayfield v. Maasden, 59 Iowa, 517 [13 N. W. 652]. * * * We think, also, that the property did not become subject to sale when defendant ceased to carry on the business in it. Before engaging in the business he used and occupied it as a home for his family, and during the time he carried on the business he also devoted it to some extent, in connection with the second story to the same use, and it was his purpose at all times to reoccupy and use it as part of his home whenever he should cease to use it in carrying on the business."

The judgment of the circuit court was affirmed.

In Mayfield v. Maasden, 59 Iowa, 517, 13 N. W. 652, that court held that a two-story brick building, which was erected upon a fraction of a city lot, 25x80 feet, with a basement, the front room of which was at one time occupied as a barber shop, in which the defendant lived and occupied the whole second story above the basement, fell within the principle announced in the Rhodes Case, and that the doctrine of that case must govern its determination. The court said:

"We are aware that the decision [in the Rhodes Case] has been criticized, and some doubt may exist in regard to its correctness; but it has stood so long that we should not be justified in overruling it, even if we were otherwise disposed to do so."

Johnson v. Moser, 66 Iowa, 536, 24 N. W. 32, was a case of a four-story brick building, in which the owner had carried on a grocery business during all the time he occupied it. The first story he always used as a storeroom and place of business, and the greater part of the cellar, in which he stored the goods kept for sale. The second and third stories he used as a place of residence; the fourth floor was unfinished, and used only as a place for drying clothes. The first and fourth stories of the building, with the cellar (except that portion used for the storage of provisions and vegetables for the use of the family), were held not exempt within the rule of the Rhodes Case; but the second and third stories and a portion of the cellar were held exempt as the homestead of the family.

In Cass County Bank v. Weber, 83 Iowa, 63, 48 N. W. 1067, 12 L. R. A. 477, 32 Am. St. Rep. 288, the property claimed as a homestead was originally a brick building, with the first floor designed for a business room and living rooms above. Later it was converted into a hotel. The first story was made into two rooms, the first being used as an office and barroom, and the other as a dining room. The second floor was reached by a stairway from the front room or office. Underneath was a cellar, access to which was by a stairway from the dining room. On the north side of this building was built a frame addition, with kitchen and bedroom. Other additions were also made to the

brick building, in which were a sitting room and bedroom on the ground floor and bedrooms above. Between the sitting room and the dining room was a washroom, through which access was had from the brick part to the bedroom, and through the washroom and bedroom to the sitting room; the sleeping rooms in this part being over the sitting room. The district court found that the parts of the building not occupied as a homestead were, of the brick part the upper rooms, and the front room below used as an office, and the cellar beneath; also the bedroom east of and between the sitting room and washroom in the frame part, and by its decision gave the plaintiff a judgment thereon. The Supreme Court said:

"We regret that the condition of the record leaves some uncertainty as to these particular facts. We have endeavored, however, to be precise in our findings. * * * After Weber purchased the premises he built on the lots at the rear end a frame business house. The stabling was used by the defendants for the purpose of carrying on their business of hotel keeping, and neither that nor the frame business house was used as a part of the homestead, and the district court thus found. Our findings * * * do not exactly accord with those of the district court. That the defendants had a homestead in the premises is not questioned. Hence we are not to inquire whether or not there is a homestead, but, conceding one, we inquire after its extent. 'When an execution defendant shall use a particular building as a home, the whole of such building, in cases of controversy and disagreement, will be presumed to constitute and be a part of the homestead, until it is shown by the party adversely interested that some specific portion is not of the homestead character, and, therefore not exempt.' [Citing Rhodes v. McCormick.] As to the office room, the bedroom, and the cellar we have no difficulty in reaching a conclusion that they are not brought within the rule. The most that can be said is that there is shown to be, to some extent, a joint occupancy of them for homestead and hotel purposes. Of the bedroom it is true that it was used as a sleeping room for the guests of the hotel; but at the same time it was used by the family as a passageway from the dining room to the sitting room, both of which were found to be parts of the homestead. Now, let us suppose the bedroom had not been used for a sleeping room by any person, but merely a room through which the family passed to the sitting room from other parts of the house. We do not think that state of facts would justify a finding that it was not used as a part of the homestead, nor do we think the mere fact of its use by guests of the hotel, while at the same time used for the other purpose, would divest it of its character as a part of the homestead. The front or office room was used as an office and barroom, but it was at the same time used by the family. It was a means of ingress and egress from the street. It was a front room, back of which was the dining room, and still back the washroom, bedroom, and sitting room. These rooms were all devoted to the same purpose. At least, it does not appear that they were not, and we assume facts not otherwise established in harmony with the homestead right. It is not as if it was shown that one story of the building was used as a store or shop, or leased and occupied by a stranger, which use would indicate of itself a disuse by the family. The entertainment of hotel guests and of boarders is often in a manner to be consistent with an occupation at the same time by the family of the apartments as a part of the home. Such entertainments would, it is true, often, if not generally, be a limitation upon the use by the family of certain apartments, but not to the extent of exclusion. * * * The business of the hotel and the support of the family as to work and supplies, as well as occupation, were so mingled naturally that it is a task of much difficulty to show separate occupations or use, and the burden of doing so is with the plaintiff. The upper story of the brick building is divided into five sleeping rooms, and these (the record shows) were used exclusively for the guests of the hotel, and not by the family for homestead purposes; that is, they are a part of the homestead building, but not particularly occupied by the family. The legal

problem in this respect, in the light of authority, is somewhat difficult. Following the rule of Rhodes v. McCormick, 4 Iowa, 368 [68 Am. Dec. 663], Mayfield v. Maasden, 59 Iowa, 517 [13 N. W. 652], and Johnson v. Moser, 66 Iowa, 536 [24 N. W. 32],—that apartments of the homestead building, not occupied as such, are liable to execution—and we should find for the plaintiff.; under these authorities our duty would be clear, but for the fact that in this case the only means of access to these rooms is through the office room, which we hold to be a part of the homestead, and we possess no authority to invade the homestead right by continuing the present means of access, unless we extend what is now by many regarded as a rule of doubtful merit—that of partitioning a homestead building between a debtor and his creditors, which we are not inclined to do. It would, of course, be idle to hold that a room or rooms in a building not used by the family were liable to execution, when the purchaser would have but a barren right—the title without a right of occupancy or use—and that, so far as disclosed by the record, would be the situation in this case. In Johnson v. Moser, 66 Iowa, 356 [24 N. W. 32], the homestead was limited to the two middle stories of a four-story building, and a right of access was given to the fourth story by hatchways, through the floors of the homestead part, and a hoisting apparatus, connected with the fourth story. This means of access, it seems, was a part of the plan of constructing the building, and could be continued without any interference with the occupation of the homestead part of the building. * * * It was, therefore, no invasion of the homestead right. The difference between that case and a right of access to these rooms through the front room below is too obvious to deserve notice. Such a right would be a serious impairment of the homestead privilege. For reasons certainly not stronger in Wright v. Ditzler, 54 Iowa, 620 [7 N. W. 98], a room used as a storeroom for the sale of merchandise was distinguished and held exempt from execution. Its sale would have interfered with the use and occupation of the living rooms above and cellar below. * * * These considerations lead us to the conclusion that the entire building should be treated as exempt from execution under the homestead law, and that the decree of the district court should be thus modified."

Groneweg v. Beck, 93 Iowa, 717, 62 N. W. 31, is to the same effect, and in its facts much like the case before us, except that the annex or one-story building in the rear of the main building was a separate building having an independent entrance from the side street, which might be removed from the lot without in any manner restricting or interfering with the homestead occupancy of the main building, and for that reason was held not exempt; but the rest of the premises, including the cellar, was held exempt as the homestead of Beck.

These are late decisions of the Supreme Court of Iowa construing the homestead law of that state, which, of course, are controlling upon this court. Other cases might be cited, varying in their facts, but it is unnecessary to do so; for those cited convince us that Rhodes v. McCormick, though not overruled in terms, is not followed in later cases, except upon facts substantially identical with its facts. That case was early disapproved in Phelps v. Rooney, 9 Wis. 86, 76 Am. Dec. 244, and other cases, as indicated in Cass County Bank v. Weber, 83 Iowa, 63, 48 N. W. 1067, 12 L. R. A. 477, 32 Am. St. Rep. 288, above, and does not control the decision of this case upon its facts.

It is urged in behalf of the trustee that the bankrupt has abandoned the first floor of the building as a part of the homestead, and has rented it for some time for business purposes, from which she derives an income. It is true that the bankrupt has rented the first floor of the building at different times, as opportunity offered to do so, and received the income therefrom, amounting at times to $250 a year, and

lesser amounts at later times; but she has never abandoned the building, and has always used the same, either in whole or in part, as the homestead of herself and family.

In Repenn v. Davis, 72 Iowa, 548, 34 N. W. 326, the facts are that plaintiff's grantors occupied the premises in question as their homestead, the legal title thereto being in the wife. The husband went away in quest of employment, intending to be absent temporarily, but without any fixed time. The wife remained at home and occupied the house with her daughter for some months, and then went to live with friends, renting the house, except one room, in which she kept her household goods. After an absence of some two years she returned, but, finding it necessary to engage in some business for her support, she found it more convenient to occupy another building, leaving some of her household goods in a room of the home, and reserved about one-half of the lot. The whole of the house and lot was not rented, and possession of a part thereof was always retained by the wife. This condition of affairs continued without change until the return of the husband and for a year thereafter, nearly seven years, when the plaintiff bought the premises from them. Both husband and wife intended to occupy the homestead again as such when their affairs should permit. It was held by the Supreme Court, reversing the decree of the district court, that there was no abandonment of the homestead, as the retention of the possession of a part thereof by the wife was notice to the world of their homestead rights in the property, and that the plaintiff acquired the title to the property free from the debts of the grantors.

Nor does the receipt by the bankrupt of rent for a part of the building, which she used for the support of herself and family, deprive the part so rented of its homestead character. In Re Irvin, 120 Fed. 733, 57 C. C. A. 147, the Court of Appeals (this circuit), speaking by Judge Caldwell, affirming In re Stone (D. C.) 116 Fed. 35, said:

"The debtor is not required to occupy and use as a dwelling all 'the improvements' on the lot, for that would make it obligatory on him to occupy his barn and other outhouses for living purposes; and no more is he required to occupy every room in his dwelling for domestic purposes. He may devote a part of his dwelling to business purposes. Our ancestors very generally carried on their business pursuits in their dwelling houses. * * * 'It is a strange and irrational idea, sometimes advanced, that a man ought to lose his homestead as soon as he attempts to make any part of it helpful in family expenses.' * * * The premises in question having been impressed with the character of a homestead before the debtor was adjudged a bankrupt, his trustee in bankruptcy cannot rightfully claim the same as part of the bankrupt's estate."

To hold that the homestead of this bankrupt should be limited to a part, or even all, of the rooms upon the second floor of this building, and direct the sale of the remainder thereof, would be practically to deny her a homestead in the premises, to the exclusive use and occupancy of all of which she is entitled, without interruption or invasion by the occupants of the remainder of the premises. Cass County Bank v. Weber, 83 Iowa, 63, 48 N. W. 1067, 12 L. R. A. 477, 32 Am. St. Rep. 288, above. And see Smith v. Quiggans, 65 Iowa, 637, 639, 22 N. W. 907.

In Jackson v. Bruns, 129 Iowa, 616, 106 N. W. 1, 3 L. R. A. (N. S.) 510, it is held by the Supreme Court of Iowa that no duty rests, in the absence of contract, upon the separate owners of upper and lower stories of the same building to maintain his own in a condition to protect the owner of the story above or below him, and that neither can be required to do so. This being true, it is an insurmountable objection to the partitioning of the two stories of this building between the bankrupt and a purchaser at execution sale of the lower story, or of any other part of this structure, for its condition is such that both the first and second stories will require, if they do not now, repairs to keep them in proper condition for occupancy. We can conceive of a building that might be designed and permanently constructed so that separate stories thereof, and perhaps separate rooms in a story, might be partitioned between separate owners without much disadvantage to either; but neither this building nor either of its stories is so arranged or constructed, and to direct that it be done, if carried into effect, would practically destroy the entire structure of its value as a building for any purpose.

The conclusion, therefore, is that the report of the trustee, and the approval thereof by the referee, setting apart as the homestead of the bankrupt only four of the rooms on the second floor of the building, be and hereby are each vacated and set aside, at the cost of the trustee. It is further ordered that the entire property in question be and hereby is set apart to the bankrupt as her homestead, to the exclusive use of which she shall be entitled. The clerk will certify to the referee a copy of this opinion and of these orders.

It is ordered accordingly.