WRIGHT & Co. v. DITZLER.

1. **Homestead:** EXEMPTION: BARN. A barn or stable used for ordinary purposes in connection with a homestead is properly appurtenant to such homestead within the meaning of section 1997 of the Code, and is exempt, without regard to its value.

2. ——: ——: BUILDING USED IN PART AS A STORE. The defendant owned a building twenty-two by forty feet in size, and two stories high, with cellar; the upper story occupied by him with his family as a residence, and the lower story used as a store. The cellar was used both in connection with the store and for family purposes, the entrance principally used by the family being through the store: *Held,* that the entire building was exempt as the homestead of the defendant. The case·distinguished from *Rhodes, Pegram & Co. v. McCormick,* 4 Iowa, 368.

*Appeal from Benton Circuit Court.*

THURSDAY, OCTOBER 21.

THE plaintiff recovered judgment against the defendant for the sum of $1,200, upon which execution was issued and levied upon the property in controversy. Thereupon the defendant served upon the plaintiffs and upon the sheriff a notice that he claimed the property levied upon as·his homestead, and required the sheriff to set it off to him as such. Referees were duly appointed, as by law required, to ascertain and report the facts to the court. The referees reported that the defendant, as the head of a family, is entitled to the property in controversy as his homestead. The plaintiffs filed exceptions to the report, and asked the court to set aside the report of the referees and refer the whole matter to other referees, and to give directions as to the report that is required of them. The court overruled this motion, and approved the report of the referees, and confirmed the defendant's homestead. The plaintiffs appeal.

*George C. Scrimgeour* and *W. A. Tewksberry,* for the appellants.

*Stivers & Bradshaw,* for the appellee.

DAY, J.—The report of the referees is as follows:

"1. The defendant, E. J. Ditzler, is a married man, and the head of a family, with five minor children.

"2. That he is the owner of lots No. 10, 11, 12 and 13 in block 2 in the village of Luzerne, and also the east half of lot No. 1 in block 1, Tangeman's addition to Luzerne.

"3. That he acquired the ownership of lots No. 10, 12 and 13 in block 2 in the year 1867, of lot 11 in block 2 in 1868, and of the other tract or lot in Tangeman's addition he became owner in 1870.

"4. That the lots 10, 11, 12 and 13 in block 2 are each thirty by ninety feet, while the east half lot No. 1 in block 1, Tangeman's addition, is one hundred and eighteen by one hundred and forty-eight feet.

"5. That on lot 13 there is a dwelling-house, a two-story frame building twenty-two by forty feet, with a cellar under part of it, the cellar being twenty-two by twenty-four feet, which building was erected in the year 1867, and has ever since been occupied exclusively by the defendant and his family.

"6. That the defendant is a merchant and produce dealer, and has used the first floor of said building as a store-room for the keeping and sale of merchandise owned by himself, and has kept his store in that room and on that floor.

"7. That the upper story of said building has been used ever since the erection thereof in 1867 by the defendant and his family for dwelling purposes, and that the defendant and his family have no other dwelling-house or abode.

"8. That the cellar under said building has at all times been used for family purposes, and at the same time defendant has kept therein certain articles, as oil, potatoes, etc., belonging to his stock of merchandise, and kept for sale as well as for family use.

"9. That there are but two entrances to the cellar, one outside entrance on the east side of said building, and one

inside from the room used as a store-room, with steps leading down under the stairway that leads to the upper floor.

"10.   That the defendant's family in going to and from the cellar used the inside entrance, going through the room used as a store, and returning the same way.

"11.   That at the foot of the stairway leading to the upper story of said building there is an inside door opening into the store-room, through which the family have been accustomed to pass from the upper story into the store-room and cellar, and return the same way.

"12.   That the cellar cannot be reached from the upper story by any inside entrance except by going through the store, and the cellar cannot be reached by any other way, except by going out of doors on the west side, or going down through inside entrance and out near northwest corner of said building, thence around the house to east side.

"13.   That the outside entrance is usually kept closed in the winter seasons, and not used by the family.

"14.   That on lot No. 12 are the well and pump used by the family.

"15.   That there is, adjacent and near to the dwelling building, a shed, situated on lot No. 12, in dimensions twenty by forty feet, and worth about the sum of sixty dollars, which has been used by the defendant, partly for keeping flour and salt belonging to his stock of merchandise, and partly by his family for wood-shed and lumber-room.

"16.   That on lot No. 14 there are two buildings, the one on the north is a shed twenty by thirty feet, boarded up and down, and worth about the sum of sixty dollars.   Said shed was used for the purpose of keeping agricultural implements, window sash, nails, etc.   Building or warehouse on south end of lot No. 11 is a very old shaky building, kept and used as a grain and ware house, and worth about the sum of forty dollars; dimensions, twenty-four by thirty-four feet.

"17.   That lot No. 10 has on it a corn-crib eight by thirty-four feet, which is attached to the warehouse on lot

No. 11. Said crib is, in our opinion, worth about ten dollars.

"18. That these last mentioned sheds and buildings have been used by the defendant exclusively, and occupied by him in the prosecution of his ordinary business as merchant and produce dealer, and none of said buildings have ever . been rented or leased by defendant to others, nor have they been to him the source of revenue or income aside from use and occupation by himself.

"19. That lots 10, 11, 12 and 13, forming an area of ninety by one hundred and twenty feet, have never been separated or marked off one from the other by any fence or other visible monument or partition.

"20. That on the east half of lot No. 1 in block 1, Tangeman's addition to Luzerne, the defendant, in the year 1870, or thereabout, erected on the northwest corner of said lot a stable and lot for his horses, cow and hogs kept for domestic use in connection with his house, and that defendant has no other stable or lot for such use and purpose.

"21. That said stable lot is about one hundred and eighty-nine to two hundred feet distant in a direct line from defendant's dwelling lots, and by way of streets about five hundred and ninety-three feet to nearest corner, being the northeast corner, or six hundred and eighty-eight feet to stable door on northwest corner of said lot.

"22. That lots No. 10 and 12 each have a small coal shed which we neglected to mention in paragraph No. 17. The shed on lot No. 12 is nine by eighteen feet. The shed on No. 10 is eight by sixteen, and are worth in our opinion about ten dollars each.

"23. That the area of all of said lots amount in the aggregate to 13–20 of an acre, and we also append a plat of the premises to these findings of facts.

"24. That the debt from the defendant, E. J. Ditzler, to plaintiff in execution was contracted subsequent to the pur-

chase of said premises, and subsequent to their use and occupation by defendant and his family, as hereinbefore described.

"From the foregoing facts the undersigned referees are of the opinion that the defendant, E. J. Ditzler, as the head of a family, is entitled to. the following described lots and the buildings thereon as his homestead, to-wit: Lots No. 10, 11, 12 and 13, sisuated in the town of Luzerne, also, west seventy-eight feet of east half of lot No. 1, in block 1, Tangeman's addition to Luzerne. That the area of all said lots set apart as a homestead for the defendant E. J. Ditzler amounts in the aggregate to 40–100 of an acre."

The exceptions of the plaintiffs to the report of the referees are as follows:

"1. Said referees have not reported that defendant, E. J. Ditzler, has been a lumber merchant, and dealer in coal and agricultural implements, and kept scales for public and general use, for hire, and had been postmaster, and that he employed clerks and laborers to carry on these various branches of business, on the premises claimed by defendant as homestead.

"2. They have not reported that defendant had been in partnership with F. H. Greulich, and that said firm had used and occupied part of said premises, to-wit: Lots 10, 11 and 12, in block 2, and the buildings situated thereon in conducting their partnership business.

"3. They have not fully and properly described the building situated upon lot 13, in block 2, in this, viz: They have not described the outside stairway leading to the upper story of said buildings occupied by defendant and family as a homestead, and that said stairs were used almost exclusively by defendant and family in gaining access to said homestead, that said referees have described said building as a dwelling-house, when in fact the upper story only has ever been used as such.

"4. They have not reported the value of the first story

of said building situated on said lot 13, or the value of the first story and cellar of same.

"5. They have underestimated the value of the other buildings on lots 10, 11 and 12 in said block 2.

"6. They have not reported the average amount of merchandise owned by defendant, and kept in said store-room and cellar for sale, or the amount of capital employed in each department of business carried on by defendant.

"7. They have not reported that there were partnership scales situated on lot 12, and that they were used by defendant and other owners as a source of revenue.

"8. They have not reported that the most accessible entrance to the cellar of building situated on lot 13 was on the outside, near the northeast corner of same, and that said entrance was most exclusively used by defendant's family.

"9. They have not reported that the store-room in building situated on lot 13, was rented to parties for the purpose of carrying on a mercantile business, and that it is now used by said lessees for that purpose.

"10. They have not reported that defendant kept the post-office in the store-room, in the building above mentioned, while he acted as postmaster in Luzerne, Iowa.

"11. They have not reported the size or value of the stable situated on the northwest corner of the east half of lot 1, in block 1, in Tangeman's addition to Luzerne, Iowa.

"12. They have not reported all the facts in the case, so as to fully enlighten the court in the premises.

"13. They have not attached to said report all the evidence taken before them, but only garbled extracts from same.

"14. The opinion of said referees is contrary to law."

I. Error cannot be presumed but must be affirmatively shown to exist. There is nothing whatever in the record to show the existence of facts assumed in the first, second, fifth, seventh, eighth, ninth, tenth, twelfth and thirteenth excep-

tions. The court did not, therefore, err in overruling these exceptions.

II. Of several of the facts assumed in the third exception there is no evidence. The fact that the referees have described the building as a dwelling house, when only the upper story was used as such, is not important. The referees have stated the facts in connection with the use of the house, and what they may have called the house is immaterial.

III. The facts stated in the sixth exception we regard as altogether immaterial to the present inquiry.

IV. It is objected that the referees have not reported the size or value of the stable. Section 1997 of the Code is as follows: "It (the homestead), must not embrace more than one dwelling house, or any other buildings except such as are properly appurtenant to the homestead as such; but a shop or other building situated thereon, and really used and occupied by the owner in the prosecution of his ordinary business, and not exceeding three hundred dollars in value, may be deemed appurtenant to such homestead." The position of the appellant seems to be that a stable can be exempt only to the extent in value of three hundred dollars. The exemption applies to a shop or other building, used by the owner in the prosecution of his ordinary business. The referees have reported that the stable was erected by the defendant for his horses, cow and hogs, kept for domestic use in connection with his house. Such a stable is properly appurtenant to the homestead as such, and is included within the first part of section 1997, and is exempt from execution without regard to value.

*1. HOME-STEAD: exemption: barn.*

V. The fourth exception to the report of the referees is that they have not reported the value of the first story of said building situated on lot 13, or the value of the first story and cellar of same. In *Rhodes, Pegram & Co. v. McCormick*, 4 Iowa, 368, it was held by this court that the ground and the second and third stories of a building thereon were exempt from judicial sale as

*2. ——: ——: building used in part as a store.*

the homestead of the defendant, whilst the first story and the cellar were subject to execution. In that case, however, the referees found that the cellar and first floor were originally designed for a business house. The building was three stories, thirty feet wide and sixty-four feet deep, and the lower story and cellar were rented for $800 a year.

The building involved in this case is a two story frame building, twenty-two by forty feet, with a cellar under part of it. It is not shown that any part of it was originally intended for a place of business. It was not rented, but has always been exclusively occupied by the defendant and his family. The cellar is used by the defendant's family, and the only convenient way of access to it in some portions of the year is through the lower story. The facts of this case clearly distinguish it from *Rhodes, Pegram & Co. v. Mc-Cormick, supra.*

We feel clearly of opinion, under the facts found by the referees, that the whole building is exempt as defendant's homestead, and that it was not necessary to report the value of the first story and of the cellar. Section 2004 provides that the court may, in its dircretion, refer the whole matter, or any part of it, back to the same or other referees. There was no abuse of discretion in the action of the court in this case.

AFFIRMED.