Cass County Bank, Appellee, v. George Weber *et ux.*, Appellants.

| 83 | 63 |
| 93 | 719 |
|---|---|
| 88 | 63 |
| 122 | 564 |

1.  **Fraudulent Conveyances:** TRANSACTIONS BETWEEN HUSBAND AND WIFE. Where a wife, having money of her own, gave the same to her husband for general use, without any agreement or expectation for repayment, until, in later years, when the husband had become insolvent, the transaction was made a means of protecting the husband's property against his creditors. *Held*, that under the evidence the trial court properly found that the conveyance was without consideration, and made for the purpose of hindering, delaying and defrauding creditors.

2.  **Homestead:** PARTIAL USE OF PREMISES FOR HOTEL: EXECUTION: EXEMPTION. Where a two-story brick building, with frame additions, was used in part for a homestead and in part as a hotel, and the cellar and rooms on the first floor used for hotel purposes were also used by the family either as a passageway between rooms occupied for homestead purposes or for ingress and egress to the premises, and the rooms in the second story, though used exclusively for hotel purposes, were inaccessible except by passage through a part of the premises occupied as a homestead, *held*, that the whole building should be treated as exempt from execution under the homestead law.

*Appeal from Cass District Court.*—Hon. H. E. Deemer, Judge.

Thursday, May 28, 1891.

THE defendants, George and L. A. Weber, are husband and wife. George Weber is a judgment debtor to the plaintiff bank. In 1885 George Weber conveyed to his wife eighty acres of land and four lots in the city of Atlantic, and this action is to set aside the conveyance as in fraud of the plaintiff's rights as a judgment creditor. The issues involve the *bona fides* of the transfer, and also the homestead character of the lots in the city of Atlantic. The district court made the following findings of fact and judgment entry.

"*First.* That on the twentieth day of November, 1886, the plaintiff recovered a judgment against one Wm. Kreamer and the defendant, George Weber, for the sum of six hundred and nineteen dollars and seventy-two cents, and ten-per-cent. interest from the date thereof, and the further sum of forty-nine dollars and nine cents costs, with six-per-cent. interest from the date thereof. *Second.* That said judgment is the property of the plaintiff, and wholly unsatisfied and unpaid, and that W. H. Kreamer is wholly insolvent, and has no property from which said judgment can be made. *Third.* That defendant, George Weber, has no property in his own name from which said judgment can be realized. *Fourth.* That on April 15, 1885, the defendant, George Weber, made and delivered to the defendant, L. A. Weber, his wife, a deed of conveyance for the following described real estate, to-wit: Lots 9, 10, 11 and 12, in block 14, in the city of Atlantic, Cass county, Iowa; and the north half of the northeast quarter of section 12, township 75 north, of range 35 west, fifth prime meridian, Cass county, Iowa, being the property then owned by the defendant, George Weber. *Fifth.* That said deed was made without consideration, and for the purpose of hindering, delaying and defrauding the creditors of the defendant, George Weber. *Sixth.* That part of the building on lot 12, block 14, Atlantic, Iowa, is occupied by the defendant,

L. A. Weber, as a homestead for herself and family, and was so occupied prior to the contracting of the debt herein. It is, therefore, ordered, adjudged and decreed by the court that the deed of conveyance from the defendant, George Weber, to defendant, L. A. Weber, his wife, conveying the above-described real estate, and recorded in book 79, on page 426, of the records of Cass county, Iowa, be held for naught, as concerns this plaintiff, and that the lien of this plaintiff's judgment is declared prior and paramount to any lien or interest the defendants, George or L. A. Weber, may have in the premises, except their right of homestead in and to part of the building situated on lots 11 and 12, block 14, Atlantic, Iowa; that plaintiff's judgment is hereby declared and established as a lien from the date thereof, November 20, 1886, upon the following described real estate, as prayed in the plaintiff's petition, to-wit: The north half of the northeast quarter of section 12, in township 75 north, of range 35 west, fifth prime meridian, Cass county, Iowa; and upon the upper story and the front room down-stairs, and the cellar thereunder, of the brick building situated on lot 12, in block 14, in Atlantic, Iowa; and also the upper story and the east room on the ground floor of the frame building joining the brick on the west, situated on the same lot and block; and also all the ground covered by the frame business house and stables, being the west end of lots 10, 11 and 12, and all of lot 9, all in block 14, Atlantic, Iowa." The defendants appeal.—*Modified and affirmed.*

*L. L. De Lano* and *Willard & Willard,* for appellants.

*Temple & Phelps* and *C. F. Loofburrow,* for appellee.

Granger, J.—I. This case, as to its facts in detail, is like many another, where a wife has money

1. FRAUDULENT conveyances: transactions between husband and wife.

in her own right which she gives to her husband for general use, without any agreement or expectation that it is a loan, or creates any obligation for payment, until in later years, when, through the vicissitudes of fortune, the transaction is made a means of protecting her husband's property against his creditors. From the evidence, though quite conflicting in many respects, the district court found that the conveyance was without consideration and for the purpose of hindering, delaying and defrauding the creditors of George Weber; and, after considering the evidence, we concur in its conclusion.

II. The more difficult question in the case is that of homestead exemption. The property claimed as a

2. HOMESTEAD: partial use of premises for hotel: execution: exemption.

homestead is that in the city of Atlantic, lots 9, 10, 11 and 12. These lots have each a frontage of twenty-five feet and a depth of one hundred and forty feet. On lot 12 there was originally built a brick building, with the first floor designed for a business room and living rooms above. The property was afterwards sold to Dierkson & Hansen, who converted it into a hotel known as the "Farmers' Home." The first story was made into two rooms, the first being used as an office and bar room, and the other as a dining room. This building is fifty feet in length by twenty-two feet in width. The second story is reached by a stairway from the front room or office. Underneath is a cellar, access to which is by a stairway from the dining room. North, and as we understand, on the side of this brick building, was built a frame addition, with kitchen and bedroom. Other frame additions were also made to the brick building, in which were a sitting room and bedroom on the ground floor and bedrooms above. Between the sitting room and the dining room was a wash room, through which access was had from

the brick part to the bedroom, and through the wash room and bedroom into the sitting room, the sleeping rooms in this part being over the sitting room. It thus appears that the district court found that the parts of the building not occupied as a homestead are, of the brick part, the upper rooms, and the front room below, used as the office, and the cellar beneath; also the bedroom east of and between the sitting room and wash room in the frame part, as by its decree the plaintiff's judgment is made a lien thereon. We regret that the condition of the record leaves some uncertainty as to these particular facts. We have endeavored, however, to be precise in our findings. On the rear end of lots 10, 11 and 12, and on lot 9, there were erected some stables for the use of the hotel, and after Weber purchased the premises he built on the lots at the rear end a frame business house. The stabling was used by the defendants for the purpose of carrying on their business of hotel keeping, and neither that nor the frame business house was used as a part of the homestead, and the district court thus found.

Our findings of fact as to the homestead occupation do not exactly accord with those of the district court. That the defendants had a homestead in the premises is not questioned. Hence, we are not to inquire whether or not there is a homestead, but, conceding one, we inquire after its intent. In *Rhodes v. McCormack*, 4 Iowa, 368, it is said: "When an execution defendant shall use a particular building as a home, the whole of such building, in cases of controversy and disagreement, will be presumed to constitute and be a part of the homestead until it is shown by the party adversely interested that some specific portion is not of the homestead character, and, therefore, not exempt." As to the office room, the bedroom and the cellar we have no difficulty in reaching a conclusion that they are not brought within the rule. The most

that can be said is that there is shown to be, to some
extent, a joint occupancy of them for homestead and
hotel purposes.   Of the bedroom it is true that it was
used as a sleeping room for the guests of the hotel, but
at the same time it was used by the family as a passage-
way from the dining room to the sitting room, both of
which were found to be parts of the homestead.   Now,
let us suppose the bedroom had not been used for a
sleeping room by any person, but merely a room
through which the family passed to the sitting room
from other parts of the house.   We do not think that
state of facts would justify a finding that it was not
used as a part of the homestead, nor do we think the
mere fact of its use by guests of the hotel, while at the
same time used for the other purpose, would divest it
of its character as a part of the homestead.   The front
or office room was used as an office and bar room, but
it was at the same time used by the family.   It was a
means of ingress and egress from the street.   It was
a front room, back of which was the dining room, and
still back the wash room, bedroom and sitting room.
These rooms were all devoted to the same purpose.   At
least, it does not appear that they were not, and we
assume facts not otherwise established in harmony
with the homestead right.   It is not as if it was shown
that one story of the building was used as a store or
shop, or leased and occupied by a stranger, which use
would indicate of itself a disuse by the family.   The
entertainment of hotel guests and of boarders is often
in a manner to be consistent with an occupation at the
same time by the family of the apartments as a part of
the home.   Such entertainments would, it is true,
often, if not generally, be a limitation upon the use by
the family of certain apartments, but not to the extent
of exclusion.   If the office room had not been thus
used, but had been a room into which the family occa-
sionally went, and through which it passed from the

other apartments to and from the street, we do not understand that it would, from such a state of facts, be so divested of a homestead character as to be liable to execution. Neither will the fact that it is so used in connection with another use have such an effect. The same is true of the cellar. It was used for hotel purposes, but also for the family. The business of the hotel and the support of the family as to work and supplies, as well as occupation, were so mingled naturally that it is a task of much difficulty to show separate occupations or use, and the burden of doing so is with the plaintiff.

The upper story of the brick building is divided into five sleeping rooms, and these (the record shows) were used exclusively for the guests of the hotel, and not by the family for homestead purposes; that is, they are a part of the homestead building, but not particularly occupied by the family. The legal problem in this respect, in the light of authority, is somewhat difficult. Following the rule of *Rhodes v. McCormack*, 4 Iowa, 368; *Mayfield v. Maasden*, 59 Iowa, 517, and *Johnson v. Moser*, 66 Iowa, 536,—that apartments of the homestead building, not occupied as such, are liable to execution,—and we should find for the plaintiff; and under these authorities our duty would be clear but for the fact that in this case the only means of access to these rooms is through the office room, which we hold to be a part of the homestead, and we possess no authority to invade the homestead right by continuing the present means of access, unless we extend what is now by many regarded as a rule of doubtful merit,— that of partitioning a homestead building between a debtor and his creditors, which we are not inclined to do. It would, of course, be idle to hold that a room or rooms in a building not used by the family were liable to execution, when the purchaser would have but a barren right,—the title without a right of occupancy or

use,—and that, so far as disclosed by the record, would
be the situation in this case.   In *Johnson v. Moser*, 66
Iowa, 356, the homestead was limited to the two middle
stories of a four-story building, and a right of access
was given to the fourth story by hatchways through
the floors of the homestead part, and a hoisting appara-
tus connected with the fourth story.   This means of
access, it seems, was a part of the plan of constructing
the building, and could be continued without any inter-
ference with the occupation of the homestead part of
the building.   It was, in effect, an independent means
of access, and the hatchway could never have been
regarded as a part of the homestead.   It was, therefore,
an invasion of the homestead right.   The difference
between that case and a right of access to these rooms,
through the front room below, is too obvious to deserve
notice.   Such a right would be a serious impairment of
the homestead privilege.   For reasons certainly not
stronger in *Wright v. Ditzler*, 54 Iowa, 620, a room used
as a storeroom for the sale of merchandise was distin-
guished and held exempt from execution.   Its sale would
have interfered with the use and occupation of the living
rooms above and cellar below.   A similar thought is
made use of in *Johnson v. Moser, supra*, in holding that
parts of the building might be sold.   It is said: "Their
sale will not unreasonably interfere with the use of the
defendant of those portions of the building which he
occupies as a place of residence.   The same cannot be
said of this case, with a right of access as it now is.
These considerations lead us to the conclusion that the
entire building should be treated as exempt from execu-
tion under the homestead law, and that the decree of
the district court should be thus modified.

III.   A point is made in argument that the defend-
ant, George Weber, was only surety for one W. H.
Kreamer on the note on which the plaintiff's judgment
was obtained, and that the plaintiff has alleged, but

has not proven, the insolvency of Kreamer. Without an intimation as to the law applicable, we think the fact is otherwise. With the additional abstract, we think the insolvency appears.

The decree of the district court is approved, except as to the modification suggested. MODIFIED AND AFFIRMED.