H. W. HATTER, Appellee, v. E. M. ICENBICE et al., Appellants.

FEBRUARY 12, 1929.

*C. F. Dickson,* for appellants.

*Clyde McFarlin* and *Hatter & Harned*, for appellee.

MORLING, J.—The property in controversy is Lots 4, 5, and 6, Lot 1 in Lot 2 in Lot 15, and Lot 14, except 220 feet off the east end, all in the southwest quarter of the southwest quarter of Section 4—78—13. Plaintiff also owns Lot 12 in Lot 13 in the same subdivision. His residence is on this latter lot, and though it is more than one-half acre in extent, no part of it was levied on. The lots in controversy, however, are immediately contiguous to Lot 12, though defendants make some claim to the contrary. The 40 acres just mentioned were subdivided in 1876 into 13 lots, varying in size from 1 acre to 7½ acres. The south 15 rods of the 40 constituted Lot 13 of the subdivision. The remaining north 65 rods of the 40 were subdivided into 12 lots. The first six, numbering from east to west, were each 65 rods in length, north and south; the easterly one, 9 rods and 21 links; and the other five, 4 rods and 23 links in width, east and west. West of these in the same subdivision were 6 lots, very irregular in shape, direction, and area, varying from less than 2 acres to nearly 5 in area. No streets or alleys are shown on the map of this subdivision. Defendants insert in their argument a purported copy of another plat of the 40, from which it appears that the south portion of Lots 1 to 6 is separated as Lot 14, of 2.14 acres, and Lot 1 in Lot 2 in Lot 15, of .36 of an acre. In 1887, the town of Deep River was incorporated, and this 40 was included within its boundaries. This 40 and the next one east of it are at the northeast corner of the corporate limits. In 1890, Lot 13 was subdivided. By this subdivision, three parcels on the east end of Lot 13 are numbered from east to west, 1, 2, and 12. Along the entire length of the west side of 12 in Lot 13 is shown a marked-off north and south strip, 16 feet in width. The lots west of 12 in Lot 13 are numbered from east to west, 11 to 3, inclusive. Similar marked strips, 16 feet in width, are shown between 11 and 10, between 10 and 9, and between 8 and 7. Along the north end of sublots numbered 11 to 7 is an unmarked strip, 20 feet in width, and along the north end of Lot 6 a marked strip, 16 feet in width. These strips are not designated on the map as alleys, nor is there on the map any designation whatever of streets, alleys, or pub-

704

lic places, other than as may be inferred from the marking off
of the strips referred to. Plaintiff in his testimony calls these
strips alleys, but says that the alley next to his Lot 12 is not
open to the public, and is fenced off and used by a neighbor. The
12 lots into which Lot 13 is subdivided vary in width from 70
to 300 feet (Lot 12, 130 feet wide). Along the south line of
this subdivision is a highway called "Church Street," which is
kept oiled by the town of Deep River. The center of this street
is the section line. The street is not shown to have been platted
as such, and the evidence tends to show that it is a highway.

South of Church Street are town plats. Numerous plats
appear in evidence or in the arguments. They are confusing,
and little effort was made in the offers of evidence to integrate
them. One or more of them, of contiguous lands, made by the
owner of the subdivisions under consideration, were plainly town
plats. The same owner made original subdivision of the 40 and
that of Lot 13. The density or sparseness of the population in
the vicinity, or elsewhere, and the location of business and resi-
dence districts, do not appear. The corporate limits extend three
fourths of a mile west and one mile south of Lot 12.

Plaintiff bought Lot 12 in Lot 13 in 1891, built his house on
it in 1892, and has occupied it ever since. He acquired between
1890 and 1906 the parcels in controversy, and used them in con-
nection with Lot 12 in Lot 13 for farming purposes, including
the raising and keeping of chickens, horses, cattle, and hogs.
Some seasons, he fed 300 or 400 hogs on the property. He kept
from one to four horses. The buildings were on Lot 12. Where,
or their character, is not shown, further than inferentially, that
they were quite substantial farm buildings. The lots in question
are hilly, have a slough upon them, and are without buildings,
except a shack 12 by 16, which was put upon it in 1922 by
Charles Shaffer, to whom plaintiff rented the premises under
lease from year to year, extended to March 1, 1928. Shaffer
lives alone in the shack. Shaffer also put on two or three chicken
houses. Plaintiff reserved the right to pasture a cow on the
leased property. Plaintiff ceased feeding hogs in 1906, and has
had no cattle since 1918, or cows since 1920. The cow pastured
pursuant to arrangement with Shaffer, was one owned by plain-
tiff's son-in-law, the milk from which was shared by the two
families. There is no evidence of the value of any of plaintiff's

property. We judicially know that Deep River in 1890 was a town of about 291 inhabitants, in 1900, about 403, and now about 640. *Ferrell v. Ellis*, 129 Iowa 614.

Plaintiff never had his homestead platted. Defendants gave no notice to plat, as required by Section 10139, Code of 1927, nor were any proceedings taken as provided by that and the following sections. The homestead, though limited to one-half acre, might be so platted as to include part of the property levied on. The execution sale in controversy was, therefore, void. *Lutz v. Ristine & Ruml*, 136 Iowa 684; *Lowell v. Shannon*, 60 Iowa 713.

Section 10136, Code of 1927, reads:

"If within a city or town plat, it [homestead] must not exceed one-half acre in extent, otherwise it must not contain in the aggregate more than forty acres; but if, in either case, its value is less than five hundred dollars, it may be enlarged until it reaches that amount."

The purpose of this section is to limit an urban homestead,— one in a city or town plat, used for the purpose of a home or residence, as distinguished from a rural home, used in connection with the business of farming, or allied occupation,—to one-half acre, if of the value of $500. The platting to which Section 10136 has reference is a platting for the purposes for which lots in a city or town are ordinarily held, owned, or used. Mere subdivision is not platting, within the meaning of that section. Farm lands are frequently subdivided. The platting must be such as, in the circumstances, to show an intention to devote the land to the purposes for which the lands in a municipality are ordinarily used. *McDaniel v. Mace*, 47 Iowa 509; *Frost v. Rainbow*, 85 Iowa 289. No precise rule for distinguishing between a mere subdivision in which the character of the land as farming land is retained, and a platting in which the property is made to assume the character of that of town or city property, can be laid down. It is clear that neither of the subdivisions of the 40 acres in question was originally "a city or town plat." Lot 13 was merely a tract of agricultural land immediately connected with small tracts of other agricultural land, apparently under the same ownership. Subdivision of Lot 13 is into tracts of varying sizes, with no designation of streets or alleys or other municipal incidents. Even Church Street on the south is not

shown on the plat. There is no indication of any municipal requirement, utility, purpose, or demand for this subdivision. All of plaintiff's lots were habitually and in good faith used as a part of the same homestead. Plaintiff's entire property, when he got it and took up his home on it, was rural and agricultural in its nature, use, and surroundings. The case comes down to the question whether such changes have occurred as to reduce plaintiff's homestead right from one not exceeding 40 acres,—a rural homestead,—to one not exceeding one-half acre in extent,—an urban homestead. As will be seen, the burden here is on defendants. Lot 12 in Lot 13 and the neighboring lots east and west are now on the edge of the urban portion of municipal territory. The evidence is that the lots or tracts east and west of Lot 12 in Lot 13 are used for residence purposes. They may be so used, and, for all that appears, may likewise be used, like plaintiff's property, for the buildings with which farm operations on the lots and immediately adjoining land are conducted. The only evidence that we have of the actual use of these properties is that of Lot 12 in Lot 13, and the use made of that, as shown by the evidence, was for farming purposes. All of plaintiff's lots were habitually and in good faith used as a part of his homestead. The property levied upon is still farm property. Property which was clearly rural and agricultural in its nature and use is not shown to have acquired an exclusively municipal nature or use.

The temporary leasing of a part of the homestead is not, of itself, a cessation of its good-faith use as part of the same homestead. The homestead exemption is a humane provision of the law, made for the benefit of the aged and infirm, and for women and children, as well as for young and vigorous men. It is for the benefit of the family. *First Nat. Bank v. Hollinsworth*, 78 Iowa 575. If, by reason of age, infirmity, immaturity, or sex, the owner is unable, by his or her own physical strength and manual labor, to extract from the soil its produce, or to raise and care for the animals to which the soil is adapted, such owner ought not to be compelled to let the land lie idle, on penalty of forfeiting the provision which the law thereby makes for himself and his dependents. Public policy is involved. The lots levied upon are contiguous to that upon which plaintiff's buildings are situated.

The lease to Shaffer is temporary. That part of the homestead which is temporarily leased, or from which profit from privilege other than the personal use of the soil by the homesteader is derived, does not thereby lose its homestead character. *Buckles v. Matson,* 178 Iowa 310; *Sibley v. Lawrence & Garner,* 46 Iowa 563, 564; 29 Corpus Juris 948. That the property was plaintiff's homestead, that it was a provision which the law entitled him to, is clear. It is for the defendants to show that this right has been lost. This they have not done. *Buckles v. Matson,* 178 Iowa 310; *Lutz v. Ristine & Ruml,* 136 Iowa 684. See, also, *Sayers v. Childers,* 112 Iowa 677; *Foster v. Rice,* 126 Iowa 190.—*Affirmed.*

ALBERT, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.