LAURA J. LOHMAN OLSEN, Appellant, v. JOHN J. LOHMAN et ux., Appellees.

No. 46274.

MARCH 7, 1944.

Joe W. Turner, of Avoca, for appellant.

Rudolph & Rudolph, of Atlantic, for appellees.

BLISS, J.— The appeal is presented to us as one at law

upon assigned errors and will be so considered. The controversy is thus stated by appellant:

"The second floor of the main building contains an apartment which is the homestead of the Lohmans, and has been during all times material to this case. There is no dispute about the homestead rights in this part of the building, nor about the extension at the rear, nor about the basement, but only with reference to the first floor of the main building."

. Since the facts are largely the controlling factors in the determination of the appeal a statement of them is essential. The appellees have lived in the town of Walnut (population about one thousand) for about thirty years, the last eighteen of which have been in the property involved. The husband, sixty-three years old at the time of the trial, has been in the butcher business most of his life and was so engaged at all times in Walnut. The property in controversy is a two-story brick building, facing west on Main Street about in the middle of a business block. The lot is 20 by 150 feet and extends east to an alley. The main building is 20 feet wide and 40 feet long. There is a brick annex or lean-to, 20 by 20 feet, and not quite a full story high, attached to the east end of the main building. This annex has a cement floor, and, in connection with the basement under the main building, was apparently used for the grinding, curing, and smoking of meat and as a storage room. There is no basement under it, and the only entrance to the basement under the main building is a stairway in the annex. The roof of the annex is used as a porch for the living rooms in the second story of the main building. The number of rooms in or the arrangement of the second story is not shown. There is no inside stairway to the second story. There is a covered stairway, opening on the street, on the south side of the first story, one half of which, or two and a half feet, is set into the building, and the other half is set into the adjoining building on the south. It is a community stairway. It extends up and back about twenty feet and opens into a community hall which extends to the rear of the buildings. At the rear of this hall is an open back stairway to the ground. There is another open back stairway, apparently from the roof of the annex to the ground. These back stairways are both very steep

and are not safely or conveniently usable when the weather is inclement or there is snow or ice. The first story of the main building has a front door on Main Street and a rear door opening into the annex.

For twelve or more years the appellees lived in the second story and conducted a retail meat market on the ground floor. They had a full equipment for the operation of such a business. In addition to retailing meats he rendered lard, ground sausage, cured and smoked meat for farmers and other butchers.

In the depression years of 1933 to 1936 he was unable to make collections. He could not meet his obligations. He was in arrears on taxes, and in 1934 procured a loan somewhat in excess of $500 from the HOLC to pay these taxes. In 1936 he was again behind on his taxes and the loan was increased to $764, which they are repaying in monthly sums of $7.68. Business grew worse and the building needed many repairs. He had no money to make them. He quit the regular retail butcher business on December 15, 1937, but continued with the service to the farmers and other butchers. Mrs. Lohman testified that before 1935, ''we lived downstairs on the first floor in the back room. Business got so slack he had to quit, and we lived in the back room and rented out two rooms upstairs, and we lived in one room. We did that until the light company took the office space downstairs in about 1937.'' The record is not clear whether they lived in a back room of the first story during this time or in the annex, but it fairly supports the first theory, particularly in view of the fact that the uses made of the annex rather rendered it unsuitable for living quarters. During this time they could not pay for the gas for heating or cooking purposes and it was shut off. To pay the gas bill they sold the piano and adding machine.

Because of Mr. Lohman's age he had great difficulty in getting work. At the time of the trial and for about a year and a half previously he has been operating the meat department in a store at Atlantic. He drives between Walnut and Atlantic in a secondhand car which his employer procured for $285 and paid for out of his wages. It has been the hope and intention of the Lohmans that they might save enough to again go into a delicatessen and retail meat business in the downstairs room. They

have saved most of their equipment and have it stored in the annex and basement. He testified: "I have saved about $140 and I figure I could probably have enough saved up by the time my tires give out."

About January 1, 1938, Lohman leased the first floor of the main building, in writing, for one year to the Iowa-Nebraska Light and Power Company for an office and showroom. The rental is $20 a month. Since the expiration of the written lease the company has continued to occupy the place as a tenant at will from month to month. Under their leasing arrangement the lessee was permitted to put a workbench and some supplies in the basement, and to use the annex for uncrating merchandise, and the Lohmans reserved the privilege and right to pass from the street through the first floor to get into the annex and basement, and the farmer patrons of Lohman who bring in their meats and take them away after they are processed have the same right of ingress and egress. Both the annex and the basement are used in this processing. Large jars in the basement are used in curing meat. Sausage is made in bulk and also cased. The meats are washed and smoked in the annex. Mrs. Lohman helps in this work. During the week she is in charge while her husband is away at work. Much of this work is done on Sundays and at night. The lessee carries the keys to the front and back doors. The store is open on Wednesday and Saturday nights. This right of passage is exercised when the store is open. If passage through the front ground floor is closed the Lohmans will have to use one of the back stairs to get to the annex or basement or go around the corner and halfway down the block to get to the rear of the building. Some farmers do drive to the back door, but half or more of them use the front way, particularly in bad weather. Lohman testified that the use of the front room in carrying on his processing was a "lifesaver." The following is a part of his examination:

"Q. Well now, if the use of the front entrance were cut off from you and the approach to your business partly cut off, would not the business be handicapped? A. Yes, it would. Q. And the profit be removed, be cut from this business then? A. It would completely; I do not believe that I could handle it then."

The annex and the basement are also used to store household furnishings. They keep their fresh and canned vegetables, fruit, preserves, etc. in the basement. The laundry equipment is kept and used in the basement. Carrying the laundry up and down the steep back stairs, and food for their meals, would be a difficult and dangerous task for either appellee. The use of the front ground floor in connection with the annex and the basement and back yard has always been necessary, not only in the proper conduct of the ordinary business of the appellees, but in the full enjoyment of their home and homestead. They have never relinquished or abandoned this right of ingress and egress. To destroy that right by a sale on execution of the front ground floor would greatly and unreasonably impair their homestead rights in the entire property, and would probably destroy the small, lifesaving business which they are struggling to maintain. In Iowa a homestead is something more than a mere shelter for the family from the weather, for by statute it may be used, within a value limitation, for the prosecution of the owner's ordinary business in order to provide other family necessities and to maintain the property. The part of the homestead used for such business purpose need not be separate from the building used as a home but it may be a part of the same building. Smith v. Quiggans, 65 Iowa 637, 639, 22 N. W. 907; Buckles v. Matson, 178 Iowa 310, 159 N. W. 1007. This has been the holding of other courts, even without such a statute. As said in Gainus v. Cannon, 42 Ark. 503, 515: "It is a strange and irrational idea, sometimes advanced, that a man ought to lose his homestead as soon as he attempts to make any part of it subservient to a trade or occupation, or to make it helpful in family expenses." In re Irvin, 8 Cir., Ark., 120 F. 733; In re Coles, Iowa D. C., 224 F. 170, 179.

It is the holding of this court, and of all courts, that to secure the benevolent purposes of the homestead laws they should be broadly and liberally construed in favor of the beneficiaries of such legislation. As said in Smith v. Quiggans, supra, 65 Iowa 637, 638, 22 N. W. 907, 908:

"The exemption law should be so construed as to effectuate the very object which the legislature had in view when the

statute was enacted. Regard ought to be had to the spirit of the law rather than to its strict letter.''

See, also, Charless v. Lamberson, 1 (Clarke) Iowa 435, 65 Am. Dec. 457; Hunt, Hill & Betts v. Moore, 219 Iowa 451, 258 N. W. 114; Fardal v. Satre, 200 Iowa 1109, 206 N. W. 22; In re McClain's Estate, 220 Iowa 638, 262 N. W. 666; Charter v. Thomas, 228 Iowa 554, 292 N. W. 842.

Whether a building is a ''residence'' so as to constitute a ''homestead'' or a ''business house'' does not depend on any particular style of building or upon the fact that it would be more valuable as a business place but upon whether it is actually occupied or used as a family residence. Phelps v. Rooney, 9 Wis. 70, 76 Am. Dec. 244; Bebb v. Crowe, 39 Kan. 342, 18 P. 223; Anderson v. Shannon, 146 Kan. 704, 73 P. 2d 5, 11, 114 A. L. R. 200 (annotation on the homestead as affected by business uses, 114 A. L. R. 209–244).

I. In her first assigned error appellant complains particularly of the court's finding that the appellees had a homestead right in the first floor or story of the main building. She relies strongly upon the decision of this court in Rhodes, Pegram & Co. v. McCormick, 4 (Clarke) Iowa 368, 68 Am. Dec. 663. That case involved a city lot 30 feet wide and 140 feet deep, on which was constructed a three-story building and basement, the full width of the lot and 64 feet deep. For some years after he built it the owner operated a store in the lower story and lived with his family in the upper stories, parts of which were rented for offices. At the time of the levy the first floor and basement were rented to another for use as a store, and the two upper stories were occupied by McCormick and his family as a homestead. Another family also occupied some of these rooms. Just what its relation was to the owner does not appear. The trial court held the entire property to be exempt to McCormick. Two members of the supreme court held that the first floor and basement were not exempt and ordered their sale on execution. The third member of the court filed a vigorous dissent. The decision has been the object of much criticism and some ridicule. Courts and commentators have said that no other court has followed it. In the annotation in 12 L. R. A. 477, to Cass County Bank v.

Weber, 83 Iowa 63, 48 N. W. 1067, 32 Am. St. Rep. 288, is this statement:

"With the exception of the Iowa courts, courts do not seem inclined to divide a building in favor of the creditors of a homestead claimant so as to permit them to levy on a portion of it. They appear to prefer, if possible, to hold the property either exempt or not exempt as a whole according to the use to which it is put.* * * Binzel v. Grogan, 67 Wis. 152 [29 N. W. 895]."

A similar statement is found in footnote in 41 L. R. A., N. S., 303. See, also, comments by the able annotator A. C. Freeman, in 70 Am. Dec. 350; and in 87 Am. Dec. 280, where, in speaking of the decision in Rhodes v. McCormick, supra, he said:

"This doctrine does not seem to have met with approval in any other state."

In Gymnastic Association v. Milwaukee, 129 Wis. 429, 438, 109 N. W. 109, 112, the Wisconsin court said:

"Thus, in Phelps v. Rooney, 9 Wis. 70 [76 Am. Dec. 244], it was held that a part of a building occupied as a homestead could not be severed from parts not so used, as a store on the first floor, for the reason that the part not used as a homestead could not be sold on execution consistently with the practical retention and enjoyment by a debtor of the living rooms above and the ground beneath. In that case we repudiated a contrary holding in Iowa (Rhodes v. McCormick, 4 [Clarke] Iowa, 368 [68 Am. Dec. 663]), whereby, in the words of a witty writer, the home of a family was 'hung in the air like the nest of a bird.'"

In Ford v. Forsgard, 87 Tex. 185, 27 S. W. 57, 25 L. R. A. 155, a two-story brick store building was involved. The court held that the renting of certain rooms therein did not destroy the homestead character of the property. The court challenged the doctrine that an integral portion of the property could be sold on execution and criticized the decision in the Rhodes case.

The difficulties which may arise from the forced horizontal partitioning of a homestead as ordered in the Rhodes case, and as urged in this case, are rather graphically set out in the petition of McCormick, the defendant in the Rhodes case, when he sought

relief in the courts from those difficulties in the case of McCormick v. Bishop, 28 Iowa 233. Bishop purchased the ground floor and basement at the execution sale in the Rhodes case. This court, speaking through Chief Justice Dillon, stated that it could not declare the rights of the parties in advance and generally but only upon the presentation of a specific concrete matter. Further than to hold that those holding title under the execution sale, and the owner of the unsold portion, were owners of their respective portions in severalty, the opinion, except for some obiter remarks, gives no aid in the matter. However, Judge Dillon, as a judge of the Circuit Court, 8th Cir., Kan., in the case of In re Tertelling, Fed. Cas. No. 13842, 2 Dill. 339, held an entire homestead exempt although it contained a brewery.

In Johnson v. Moser, 66 Iowa 536, 540, 24 N. W. 32, 33, the court, following the rule of the Rhodes case, ordered sold on execution the first and fourth stories of a building claimed as exempt, and the cellar "except that portion used by defendant for the storage of provisions and vegetables for the use of his family." Johnson bought that part of the cellar sold at the sheriff's sale, and later (Johnson v. Moser, 72 Iowa 523, 34 N. W. 314) brought suit to partition the cellar and to determine the respective portions owned by each "by metes and bounds." This court held that since each owned in severalty the action by partition did not lie.

The complications and difficulties from a horizontal partition by execution sale are clearly apparent when the matter of repairs to the building is considered. A partition on paper is something different from a partition in fact. The walls of the first story and the floor and ceiling thereof are but parts of the entire building and essential to its maintenance. They cannot be sold without seriously affecting the rights of the owner of the upper story, the basement, and the ground. The roof of the building is as necessary to the first story as it is to the top story, and the same is true of the foundation. And yet, if the first story is sold on execution the purchaser or his privies could not be compelled to contribute to the expense of repairing the roof or the foundation, arising from natural wear and tear or from any

cause not attributable to said purchaser or to those holding under him. Neither could they be compelled to repair the walls of the first story which support the upper story. This is the law as announced in Jackson v. Bruns, 129 Iowa 616, 106 N. W. 1, 3 L. R. A., N. S., 510.

While this court followed the doctrine of the Rhodes case in Mayfield v. Maasden, 59 Iowa 517, 518, 13 N. W. 652, 653, it said of it, in that case:

"We are aware that the decision has been criticized, and some doubt may exist in regard to its correctness, but it has stood so long, that we should not be justified in overruling it, even if we were otherwise disposed to do so."

The rule of the Rhodes case was also followed in Johnson v. Moser, supra, 66 Iowa 536, 24 N. W. 32.

In Wright & Co. v. Ditzler, 54 Iowa 620, 627, 7 N. W. 98, 102, the situation was quite like that of this case. There the defendant owned a two-story building, 22 by 40 feet in size. The upper story was occupied by himself and family as a residence. On the first floor he operated a store. The cellar was used for both store and family purposes. Levy was made upon the property. The court held the entire building exempt to the defendant as a homestead and distinguished it from the Rhodes case. One reason given by the court for sustaining the homestead claim is stated as follows:

*"The cellar is used by the defendant's family, and the only convenient way of access to it in some portions of the year is through the lower story."* (Italics ours.)

The same reasoning has much stronger fact support in the case before us.

In Smith v. Quiggans, supra, 65 Iowa 637, 22 N. W. 907, the defendant and family lived in the second story and operated a store on the first floor. Since that floor was found to be worth less than $300, the statutory limit in value, the entire building was held to be exempt.

In Cass County Bank v. Weber, supra, 83 Iowa 63, 69, 48 N. W. 1067, 1069, 12 L. R. A. 477, 32 Am. St. Rep. 288, the defendant converted a two-story business building, with living rooms

on the second floor, into a hotel. Some frame additions were attached to the building. The trial court found some of the rooms to be nonexempt as not a part of the homestead. This court held the entire building exempt as a homestead. The front room downstairs was used as an office and a barroom. It was also used as the family means of ingress and egress to all parts of the house from the street, making a joint occupancy of it for homestead and hotel purposes. In holding that use of this room for hotel purposes did not divest it of its homestead character, the court said:

"The same is true of the cellar. It was used for hotel purposes, but also for the family. The business of the hotel and the support of the family as to work and supplies, as well as occupation, were so mingled naturally that it is a task of much difficulty to show separate occupations or use, and the burden of doing so is with the plaintiff. The upper story of the brick building is divided into five sleeping rooms, *and these (the record shows) were used exclusively for the guests of the hotel, and not by the family for homestead purposes;* that is, they are a part of the homestead building, but not particularly occupied by the family. *The legal problem in this respect, in the light of authority, is somewhat difficult.* Following the rule of Rhodes v. McCormick, 4 Iowa 368; Mayfield v. Maasden, 59 Iowa 517, and Johnson v. Moser, 66 Iowa 536,—that apartments of the homestead building, not occupied as such, are liable to execution, —and we should find for the plaintiff; and under these authorities our duty would be clear but for the fact that in this case the only means of access to these rooms is through the office room, which we hold to be a part of the homestead, and we possess no authority to invade the homestead right by continuing the present means of access, *unless we extend what is now by many regarded as a rule of doubtful merit,—that of partitioning a homestead building between a debtor and his creditors, which we are not inclined to do."* (Italics ours.)

In discussing Wright & Co. v. Ditzler, supra, 54 Iowa 620, 7 N. W. 98, the court said the sale of the first story "would have interfered with the use and occupation of the living rooms above

and cellar below." With much stronger reason, the same language applies to the sale of the first story in this case, for it would interfere with the family use of the upper floor, annex, and basement and very likely greatly injure or destroy appellees' meat-processing business. For the reason that the division of the homestead building between the Cass County Bank and the Webers would "be a serious impairment of the homestead privilege" of the Webers, this court held the entire building exempt as a homestead. The Weber case goes further in some of its holdings than we are required to go to uphold the judgment in this case.

In Groneweg v. Beck, 93 Iowa 717, 719, 62 N. W. 31, 32, the defendant and wife owned a two-story brick building, 22 by 70 feet, with a basement. They lived upstairs and ran a grocery store and saloon on the first floor. This court sustained the finding of the trial court that the first floor and cellar were a part of the homestead. The laundry equipment, canned goods, provisions and other household property were in the basement and it was necessary to go through the storeroom on the first floor to go from the living rooms to the basement. The court said:

"There could not be the usual occupation of the resident rooms without the partial use of the store room."

In Edmonds v. Davis, 122 Iowa 561, 563, 98 N. W. 375, 376, the execution sale of a portion of the premises constituting a homestead was enjoined. The sheriff levied on the first story and the middle room of the second story. Plaintiff owned a two-story brick-veneered building, and used the front part of the first story for a millinery shop and the back part of it and the upstairs for living rooms for the family. She was an invalid and had to sleep downstairs. The court said:

"One thought clearly runs through all the adjudicated cases; that is, that the homestead, if such exists, should be preserved, and there can be no sale of any portion of the building if the result thereof will be to unreasonably interfere with the use and occupation of such homestead."

The same thought is expressed in Buckles v. Matson, supra, 178 Iowa 310, 318, 159 N. W. 1007, 1010. The question in that

case was whether a two-story building was a homestead and whether the widow elected to take her homestead right. The opinion, by Justice Weaver, reviewed our pertinent decisions and affirmed the decree of the trial court in establishing a homestead right in the defendant in the entire building. Her husband and she operated a restaurant on the first floor. They slept upstairs and ate their meals downstairs. There was a well in the cellar from which they used water for cooking. All their provisions for the family and the restaurant trade were kept in a cellar. After her husband's death the widow continued to operate the restaurant for a time and then leased the front part of the first story. She continued to live in the second story but went through the leased portion to get well water from the basement for cooking purposes. The court said:

"The rule that allows a single building occupied as a home, clearly within the territorial limits of the right to occupy it as a home, to be divided into portions by the courts, one part designated as a homestead, and another portion removed from the protection of the homestead right, *is, as said in one of the cases, supra, of very doubtful propriety.* It follows, therefore, that, when a building * * * is actually occupied as a homestead, it must clearly appear that the part sought to be separated, can be separated without interfering with the full enjoyment of the portion of the building set aside as a homestead. * * * The mere commercializing of a portion of the homestead, while she retained the commercialized portion for her use, in connection with the enjoyment of the part actually occupied by her as a home, does not destroy the homestead character of the commercialized part. To turn it over to these plaintiffs—and, if they succeed, that is the legal effect of it—is to deprive her of access to the cellarway, to the water that appears essential to the enjoyment of the home, the right of entrance to the rear portion of the first floor, which has not been commercialized, and, we think, would unreasonably interfere with the enjoyment of what she took when she elected to take the homestead in lieu of her distributive share."

In Bebb v. Crowe, supra, 39 Kan. 342, 345, 18 P. 223, 225, the facts were quite like those in the case at bar. In sustaining

the homestead right in the entire two-story building, the court said:

"It appears that the lower or first story was not exclusively occupied by the tenant. The owner reserved the right to go to and from the stairway leading to the second story; without that right the part of the building occupied by the family would have been less convenient; their most easy way of ingress and egress, being by way of the stairs, reached by going through the store room, would have been cut off."

It appears to us that it has been the pronounced tendency of this court to depart from the doctrine of the Rhodes case and that of Mayfield v. Maasden and Johnson v. Moser, both supra, which have followed it. Its wisdom and soundness have been questioned by the court regardless of its personnel. This disinclination to follow or extend that rule is to be noted particularly in Cass County Bank v. Weber, supra. It is mentioned by the annotator in 114 A. L. R. 241. And the annotator of that case in 32 Am. St. Rep. 293, said:

"The decision in the principal case [Weber case] brings the courts of Iowa more nearly in line with those of other states * * *."

The same question arose in the District Court of the United States for the Northern District of Iowa, in In re Coles, 224 F. 170, 174, 178. It came before that court on a review of an order of a referee in bankruptcy on the report of the trustee as to the bankrupt widow's homestead exemption. Her homestead was a two-story brick-veneered building and basement, 22 feet wide, fronting on a street. She and her children lived in the second story. For a time she conducted a store on the ground floor and later rented it as opportunity offered and used the rents to support the family. There were inside stairways to the second floor and basement, which were closed when the first story was occupied by lessees and the outside stairways were then used. Since the federal court was required to follow the decision of this court in construing the homestead statutes, the court reviewed our decisions at length. Judge Reed, in holding the entire building exempt as a homestead, said:

"The Supreme Court of Iowa has persistently declined to enlarge the rule upon which the Rhodes case was decided. * * * These are late decisions [the Matson case was decided later] of the Supreme Court of Iowa construing the homestead law of that state, which, of course, are controlling upon this court. Other cases might be cited, varying in their facts, but it is unnecessary to do so; for those cited convince us that Rhodes v. McCormick, though not overruled in terms, is not followed in later cases, except upon facts substantially identical with its facts. That case was early disapproved in Phelps v. Rooney, 9 Wis. 86, 76 Am. Dec. 244, and other cases, as indicated in Cass County Bank v. Weber, 83 Iowa 63 * * * and does not control the decision of this case upon its facts. * * * To hold that the homestead of this bankrupt should be limited to a part, or even all, of the rooms upon the second floor of this building, and direct the sale of the remainder thereof, would be practically to deny her a homestead in the premises, to the exclusive use and occupancy of all of which she is entitled, without interruption or invasion by the occupants of the remainder of the premises. [Citing the Weber case and Smith v. Quiggans, supra.] * * * In Jackson v. Bruns, 129 Iowa 616 * * * it is held by the Supreme Court of Iowa that no duty rests, in the absence of contract, upon the separate owners of upper and lower stories of the same building to maintain his own in a condition to protect the owner of the story above or below him, and that neither can be required to do so. *This being true, it is an insurmountable objection to the partitioning of the two stories of this building between the bankrupt and a purchaser at execution sale of the lower story, or of any other part of this structure, for its condition is such that both the first and second stories will require, if they do not now, repairs to keep them in proper condition for occupancy.* We can conceive of a building that might be designed and permanently constructed so that separate stories thereof, and perhaps separate rooms in a story, might be partitioned between separate owners without much disadvantage to either; *but neither this building nor either of its stories is so arranged or constructed, and to direct that it be done, if carried into effect, would practically destroy the entire structure of its value as a building for any purpose.*" (Italics ours.)

The difficulties which in fact arose in carrying out the orders of the court in the Rhodes case and in Johnson v. Moser, supra, were productive of other litigation. Complications or litigation will be implicit and very probable in any such order. In the Rhodes case the purchaser at the execution sale became a trespasser when he stepped out of his back door. In the present case any such purchaser will have no back door which he can use, for he will trespass on the annex if he uses it. If the building burns down he will have no rights whatever in, on, or to the property. Just what insurable interest either owner might have in the walls, floor, and ceiling of the first story might be very questionable and difficult of ascertainment. All of these complications and limitations will greatly depreciate the value of the use of the first story, and also its sale value not only at the execution sale but at all sales thereafter. They will also depreciate the value of the use and the sale value of what will remain of the homestead. The balance of convenience is against the enforcement of such orders. It violates the enlightened public policy and the benevolent purposes which brought about the enactment of homestead-exemption acts in this and in every other state. It was their clear intent to secure to those benefited a place of residence where the occupants might be sheltered and live in reasonable comfort, safe from subjection to debts which misfortune may thrust upon even those who have been industrious and prudent. Homestead-exemption laws always entail a loss upon the creditor, but in the long view such loss is outweighed by the public gain and the benefit to the householder and his family. To grant the relief asked for by the appellant would be doubly burdensome to the appellees. It would cause the property taken from them to be sold at much less than its real value, and it would also depreciate the value of the property retained by them. The homestead-exemption law should not be so construed as to bring about such a result if it is reasonably possible to avoid it. The enforcement of the rule of the Rhodes case, in the case before us, or in any like case where there is a horizontal partitioning of a homestead building or the setting apart of a room therein to a debtor, by execution sale, is contrary to the spirit of the home-stead-exemption law, is not practicable or fairly workable, and

effects an unwarranted sacrifice of the property of those who can ill afford such loss and whom the law was designed to protect.

The appellant argues that the first story of the main building cannot be claimed as exempt because it had been used in the prosecution of appellees' ordinary business, for the reason that it had a value in excess of the $300 value limit provided by section 10137, Code of 1939. Appellant used a real-estate broker, who testified that the building and annex were worth $1,500 and the lower floor of the main building was worth $1,250. The testimony of this witness was not persuasive, and because of the general finding of the court it is apparent that little probative weight was given to it. Mr. Lohman testified that one would be lucky if he could get $1,000 for the entire property. As a basis for this estimate he testified: "I tried to put it on the market and I know." As the owner of the property he was a qualified and competent witness, and the concrete testimony he gave no doubt appeared of greater weight to the court than the unsupported estimate of the broker. The burden was upon appellant to establish that this room was not a part of the homestead. As said in Buckles v. Matson, supra, 178 Iowa 310, 316, 159 N. W. 1007, 1009:

"The building we are now dealing with constitutes and is but one house—one house in which the defendant and her husband resided, in which they made their home. The building, therefore, was impressed with the homestead character. If any portion of this building has lost such character by reason of the manner of its use, the burden is on the one asserting it to establish the facts from which the disuse or abandonment may appear."

See, to the same effect, Cass County Bank v. Weber, supra, 83 Iowa 63, 67, 48 N. W. 1067, 12 L. R. A. 477, 32 Am. St. Rep. 288, and Rhodes, Pegram & Co. v. McCormick, supra, 4 (Clarke) Iowa 368, 372, 373, 68 Am. Dec. 663. It is also said in Cass County Bank v. Weber, supra, at page 68 of 83 Iowa, page 1069 of 48 N. W., that "we assume facts not otherwise established in harmony with the homestead right."

How can any witness put a value upon the downstairs floor of this building that has any probative value? The four walls of this story support the second story and are supported

by the basement walls, and the second story and the basement belong to the appellees. The ceiling of the lower story is the floor of the second story, and the floor of the first story is the ceiling of the basement, and the rear wall of the first story is the front wall of the annex. It is impossible to detach the first story from the remainder of the building so as to place any accurate valuation upon it. The appellant has not met the burden of establishing that the value of the lower story was in excess of $300.

It appears to us that the findings and judgment of the trial court that the entire building was exempt as a homestead to the appellees has substantial support in the record, and that to hold otherwise would unreasonably interfere with the use of the building as a homestead and greatly impair its value, and would also seriously injure and probably destroy the meat-processing business of the appellees.

Under the record, and many decisions of this court, there was no abandonment of any homestead rights in the first story by the leasing of this part of the property. Buckles v. Matson, supra, 178 Iowa 310, 320, 159 N. W. 1007; Charter v. Thomas, supra, 228 Iowa 554, 556, 292 N. W. 842; Hatter v. Icenbice, 207 Iowa 702, 706, 223 N. W. 527; Sweet v. Bergen, 229 Iowa 858, 295 N. W. 181.

II. The second error assigned challenges the dismissal of the garnishment. The appellant failed to establish that the first story was not a part of the homestead. The court was clearly right in dismissing the garnishment of the rentals of this story. In Morgan & Hunter v. Rountree, 88 Iowa 249, 252, 55 N. W. 65, 66, 45 Am. St. Rep. 234, 236, we expressly decided this question. We there said and held:

"It is certainly the spirit and purpose to exempt, not only the homestead, but also the use thereof, for without the use the exemption would be valueless. It is not simply as a place of shelter, a place in which to live, that homesteads are exempt, but also as a means of making a living, as is shown by the exemption of one-half an acre in town, forty acres in the country, and the shop or building, when situated on the exempt premises, in which the head of the family carries on his business. The use of the homestead, as well as the homestead itself, is unquestionably

exempt so long as the homestead character is maintained. \* \* \* We think it is in harmony with the evident spirit and purpose of our statute to hold that the head of a family owning a homestead has a right to hold as exempt, not only the homestead and its use, but also crops or money which he may derive from its use while the property continues to be his homestead.''

This is the uniform holding of the courts generally.

We are not to be understood as holding that the occupancy as a homestead of a portion of every building would necessarily result in the entire building being held exempt.

It is our conclusion that the judgment appealed from must be and it is affirmed.—Affirmed.

All JUSTICES concur.